BLUE CROSS OF MASSACHUSETTS, INC., & another[1] *vs.*
COMMISSIONER OF INSURANCE.

Suffolk. February 9, 1984. — June 11, 1984.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, & LYNCH, JJ.

*Insurance,* Medicare supplement coverage. *Medicare.*

Despite a claim by the Commissioner of Insurance that a proceeding brought
by Blue Cross of Massachusetts, Inc., and Blue Shield of Massachusetts,
Inc., challenging the Commissioner's refusal to approve certain rates
proposed by the plaintiffs was moot because G. L. c. 176A, § 6, does
not permit retroactive rate adjustment, this court considered the case on
its merits. [180-181]

Under G. L. c. 176A, § 6, rates charged by a hospital service corporation
for Medicare supplement coverage cannot be revised before they have
been in effect for twelve months, even though during this period the
benefits which the corporation must pay its subscribers are automatically
increased, as required by 211 Code Mass. Regs. § 47.07 (1980), to
compensate for a decrease in Medicare benefits. [181-183]

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on January 4, 1983.

The case was heard by *O'Connor, J.*

*Jeffrey Swope* for the plaintiffs.

*H. Reed Witherby,* Assistant Attorney General, for the de-
fendant.

HENNESSEY, C.J. The plaintiffs are nonprofit corporations
which provide coverage for certain hospital and medical serv-
ices to their subscribers. Through their joint "Medex" program,
they provide Medicare supplement coverage, which covers
certain deductibles and copayments for which Medicare bene-
ficiaries are otherwise responsible. By regulation of the Com-
missioner of Insurance (Commissioner), nongroup Medicare

[1] Blue Shield of Massachusetts, Inc.

supplement coverages must provide that "benefits will be automatically changed to match any changes in [Medicare] cost sharing." 211 Code Mass. Regs. § 47.07 (1980). The plaintiffs' Medex certificates so provide. Thus, when Medicare benefits are decreased under Federal regulations, the amount of the benefits which the plaintiffs must pay to their subscribers under their Medicare supplement coverage automatically increases.

The approval of the Commissioner is required before changes in Medex rates can become effective. G. L. c. 176A, § 6. In the spring of 1982, the Commissioner approved an increase in Medex rates, effective June 1, 1982. The rates submitted by the plaintiffs and approved by the Commissioner were based on "the assumption that they [would] remain in effect for each subscriber for a full 12-month period." In calculating the rates, the plaintiffs projected an increase in the Medicare inpatient hospital deductible and related copayments, effective January 1, 1983.[2] In addition, the rates reflected a projected increase in the cost of physicians' services coinsurance coverage,[3] due to projected increased claim incidence and projected increased average cost per claim. However, no change in the type of physicians' services subject to the Medicare coinsurance requirement was anticipated.

When the plaintiffs submitted their rates in the spring of 1982, the Medicare statute provided, as an exception to the physicians' services coinsurance requirement, for payment of 100% of expenses incurred for inpatient services of pathologists and radiologists. By an amendment to the statute, effective October 1, 1982, this exception was deleted. See Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, § 112,

---

[2] The Medicare inpatient hospital deductible was projected to increase from $260 to $300. Corresponding increases were projected for the daily copayment amount for the sixty-first through ninetieth days of hospital stay, which equals one-fourth of the inpatient hospital deductible, and for the daily copayment amount for the twenty-first through one hundredth days of skilled nursing facility stay, which equals one-eighth of the inpatient hospital deductible.

[3] With certain exceptions, Medicare pays only eighty per cent of the reasonable charges for physicians' services. See 42 U.S.C. § 1395*l*(a) (1) (1976).

96 Stat. 324, 340 (1982), amending 42 U.S.C. § 1395*l*(a) (1) (1976). Thus Medicare beneficiaries or their supplemental coverage carriers became responsible for twenty per cent of the charges for these services. By virtue of the Commissioner's regulation, as reflected in Medex certificates, the plaintiffs were required to cover their subscribers for these costs. In addition, late in 1982, the plaintiffs learned that the increase in the Medicare inpatient hospital deductible and related copayments, effective January 1, 1983, would be slightly greater than anticipated.

On December 3, 1982, the plaintiffs submitted for the Commissioner's approval the revised rates at issue in this appeal, to be effective February 1, 1983. The revised rates included an increase to cover payments required by the increase in the inpatient hospital deductible and related copayments, as well as an increase to cover payments for twenty per cent of charges for inpatient services of radiologists and pathologists. The Commissioner disapproved the rate revision as being prematurely filed, relying on the requirement of G. L. c. 176A, § 6, that rates approved under that section "shall continue in effect for not less than twelve months after [the] effective date [thereof]." The Commissioner subsequently approved the plaintiffs' annual rate revision, effective July 1, 1983, which included an increase for the unanticipated increment of the increase in the inpatient hospital deductible and related copayments, and an increase to cover the cost of coinsurance for inpatient services of radiologists and pathologists, both derived in the same manner as that used in the proposed rates at issue in this appeal.

The plaintiffs brought a petition before a single justice of this court, pursuant to G. L. c. 176A, § 6, for review of the Commissioner's disapproval of their proposed February 1, 1983, rate revision. The parties jointly stipulated to the facts, and the plaintiffs moved for summary judgment. After hearing, the single justice entered summary judgment for the Commissioner. The plaintiffs appealed. We affirm.

We first address the Commissioner's contention that the case is moot. Because the rates which became effective July 1, 1983,

included the equivalent of the increases sought by the plaintiffs for February 1, 1983, it is only the rates for the intervening five-month period that are at issue. The Commissioner argues that the statute does not permit retroactive rate adjustment and that the case is therefore moot. We need not decide whether retroactive rate adjustment is permissible. If it is permissible, then the case is obviously not moot. If it is not permissible, then the case falls within the "capable of repetition, yet evading review" exception to the mootness doctrine. See, e.g., *Boston Edison Co.* v. *Department of Pub. Utils.,* 375 Mass. 1, 6, cert. denied, 439 U.S. 921 (1978).

We turn now to the substantive issue presented by this appeal, that is, whether the Commissioner was correct in concluding that Medex rates cannot be revised before they have been in effect for twelve months. General Laws c. 176A, § 6, provides in pertinent part: "The contracts and rates [approved by the Commissioner under this section] . . . shall continue in effect for not less than twelve months after [the] effective date [thereof] and thereafter until any changes shall have been approved as provided above; except that an increase in benefits to subscribers may, *with the approval of the commissioner,* be allowed at any time . . ." (emphasis supplied). The plaintiffs argue that the automatic increase in amounts payable under their contracts by virtue of the reduction in Medicare benefits is an "increase in benefits" within the meaning of the section and that the exception to the twelve-month bar should be read to permit a concomitant increase in rates.

The increase in the amounts payable by the plaintiffs is not an "increase in benefits." The plaintiffs' subscribers are entitled, under the terms of their Medex policies, to increased payments upon the happening of the contingency that Medicare payments are reduced. The increase is automatic; no permission of the Commissioner is necessary. Thus the increase is not within the purview of the exception. For this purpose, "benefits" must be taken to mean contractual entitlements.[4] The plain-

---

[4] One of the difficulties presented in this appeal is inherent in the meaning of "benefits." As used in 211 Code Mass. Regs. § 47.07 (1980), referred to earlier in this opinion, benefits means "payments"; as used in G. L. c. 176A, § 6, *supra,* benefits clearly means "contractual entitlements."

tiffs have not changed the terms of their policies; thus the contractual entitlements of their subscribers have not been increased.

Even if the automatic increase in payments under the policies were an increase in benefits, the exception would not cover the plaintiffs' attempt to increase rates. The plaintiffs urge us to construe the exception as providing, in effect: at any time when there is an increase in benefits an increase in rates may be allowed. The thrust of the plaintiffs' argument is that fairness requires that any unanticipated increase in the payments it must make be offset by a rate increase, and that we should not assume that the Legislature intended to bring about unfairness. The plaintiffs' construction, however, results in an anomalous situation. The exception cannot be read to permit a decrease in rates if an increase in Medicare payments results in a decrease in the amounts payable by the plaintiffs. The Legislature cannot have intended to permit adjustment in one direction only. Thus we must conclude that it did not intend to permit adjustment of rates at all. More importantly, a construction of the exception as urged by the plaintiffs would tend to defeat the purposes of the rule, which presumably are to assure subscribers of some certainty in their rates and to permit the Commissioner to review contract and rate filings thoroughly at reasonable intervals so as not to interfere with his other regulatory responsibilities.

The plaintiffs argue that if the exception is only for increases in benefits and does not permit a concomitant increase in rates, then it is anomalous to require the approval of the Commissioner. However, there is a strong public interest in maintaining the fiscal integrity and viability of corporations subject to G. L. c. 176A, which is reflected in the broad responsibilities given to the Commissioner in that chapter to oversee the affairs of such corporations. It is reasonable for the Legislature to intend to permit increases in benefits at less than twelve-month intervals and to give the Commissioner the authority to approve or disapprove such increases.

Finally, the plaintiffs argue that the second clause of 211 Code Mass. Regs. § 47.07 (1980) is either an administrative

interpretation of the exception or an administrative waiver of the rule. The regulation provides in part: "Any Medicare Supplement policy . . . shall provide that benefits will be automatically changed to match any changes in cost sharing; premiums may likewise be changed." This regulation applies also to policies issued by commercial insurers, which are not subject to G. L. c. 176A, and which may change their rates without prior approval of the Commissioner; thus the regulation is clearly not an administrative interpretation of the exception clause in G. L. c. 176A, § 6. Nor can the regulation be interpreted as an administrative waiver of the twelve-month rule, for such would be beyond the Commissioner's authority. A blanket "waiver" of the rule would not facilitate the operation of G. L. c. 176A, § 6, but rather would contradict its plain language. See G. L. c. 176A, § 6, par. 4. Nor may the Commissioner by regulation suspend or modify the filing requirements. Rather, by written order pursuant to regulations he may do so. See G. L. c. 176A, § 6, par. 3. There is no suggestion that any such order was issued in this case.

The plaintiffs' claim of confiscation is entirely unfounded. The plaintiffs voluntarily undertook to provide Medicare supplement coverage. When they did so, they had notice of the regulation requiring automatic adjustment of benefits and of the statute forbidding adjustment of rates before the expiration of twelve months. Thus they undertook the risk of unforeseen changes in Medicare law. Their failure to anticipate our ruling cannot be made the basis of a constitutional claim.

*Judgment affirmed.*