Massachusetts Association of Older Americans, Inc. *v.* Commissioner of Insurance.

MASSACHUSETTS ASSOCIATION OF OLDER AMERICANS, INC.
*vs.* COMMISSIONER OF INSURANCE & others.[1]

Suffolk. May 9, 1984. — November 29, 1984.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Hospital Service Corporation. Medical Service Corporation. Commissioner of Insurance. Practice, Civil,* Review of decision of Commissioner of Insurance. *Insurance,* Commissioner of Insurance, Rating, Medical supplement coverage, Medicare. *Administrative Law,* Judicial review.

Judicial review of a decision by the Commissioner of Insurance approving an increase in health insurance rates was governed by the "substantial evidence" standard. [407-409]

In a proceeding before the Commissioner of Insurance for approval of an increase in rates charged for health insurance providing supplemental coverage to Medicare beneficiaries (Medex), the Commissioner's exclusion of a proposed generic drug reduction factor from the rate computation was supported by undisputed evidence showing a substantial likelihood that the factor as proposed would be inconsistent with internal trends derived from historical data. [409-412]

In a proceeding before the Commissioner of Insurance for approval of an increase in rates charged for health insurance providing supplemental coverage to Medicare beneficiaries (Medex), the evidence supported the Commissioner's conclusion that the insurance carriers' failure in two instances to account for minor savings resulting from changes in Federal Medicare regulations did not bring the over-all rates outside the range of reasonableness. [412-413]

Where the appropriateness of including in health insurance rate calculation a factor for subscriber contribution to the carriers' general reserves was not raised before the Commissioner of Insurance in a proceeding for approval of the rates, this court did not reach this issue on review of the Commissioner's determination. [413-414]

Revised health insurance rates took effect on the date specified in the approval order issued by a deputy commissioner of insurance acting as hearing officer pursuant to G. L. c. 26, § 7, and not on the later date on which the Commissioner issued a written opinion approving the deputy commissioner's decision. [414-417]

[1] Blue Cross of Massachusetts, Inc., and Blue Shield of Massachusetts, Inc.

CIVIL ACTIONS commenced in the Superior Court Department on September 9, 1983, and in the Supreme Judicial Court for the county of Suffolk on September 15, 1983.

The cases were consolidated in the Supreme Judicial Court for the county of Suffolk and were reported by *Liacos,* J.

*Ellen A. Bruce (Celia Josephson* with her) for Massachusetts Association of Older Americans, Inc.

*Stephen S. Ostrach,* Assistant Attorney General, for Commissioner of Insurance.

*Jeffrey Swope* for Blue Cross of Massachusetts, Inc., & another.

ABRAMS, J. The Massachusetts Association of Older Americans, Inc. (MAOA), seeks review of a decision of the Commissioner of Insurance (commissioner) approving an increase, effective July 1, 1983, in rates charged by Blue Cross of Massachusetts, Inc. (Blue Cross), and Blue Shield of Massachusetts, Inc. (Blue Shield),[2] to persons who subscribe to their "Medex" program. Medex is a form of health insurance which provides supplemental coverage to Medicare beneficiaries (primarily persons age sixty-five and over) for hospital, medical and other health care services which are not covered, or are covered only in part, by Medicare.[3]

On appeal, MAOA contends that the new Medex rates approved by the commissioner are excessive, in violation of G. L. c. 176A, § 6, and G. L. c. 176B, § 4. Specifically, MAOA argues that the commissioner erred (1) in excluding an external generic drug reduction factor from rate computation; (2) in failing to adjust the proposed rates to reflect the impact of two changes in Federal Medicare law on Medex costs; and (3) in including in the rate calculation a factor for subscriber

---

[2] Blue Cross is a hospital service corporation, see G. L. c. 176A, and Blue Shield is a medical service corporation, see G. L. c. 176B. Both are nonprofit and tax exempt. See G. L. c. 176A, §§ 1, 19; G. L. c. 176B, §§ 1, 14.

[3] Under G. L. c. 176A, § 5, first par., and G. L. c. 176B, § 3, second par., Blue Cross and Blue Shield jointly issue subscriber certificates for Medex coverage. Review of Medex rate revisions is therefore governed by both G. L. c. 176A and G. L. c. 176B. See G. L. c. 176A, §§ 6 and 10; G. L. c. 176B, §§ 4 and 17.

contribution to general reserves. It also challenges as unfairly discriminatory the commissioner's tentative approval of a schedule of surcharges to be applied to the Medex premiums paid by persons who enroll in the program after their first year of eligibility.[4] Finally, MAOA asserts that the revised rates could not lawfully take effect until after August 30, 1983, the date on which the commissioner affirmed the hearing officer's decision, and that Medex subscribers are thus entitled to a rebate for increased rates paid prior to that date. We conclude that the commissioner's decision should be upheld, and that the revised rates properly became effective on July 1, 1983.

On March 7, 1983, Blue Cross and Blue Shield filed proposed Medex rates with the Division of Insurance (division), seeking a composite increase in rates of 29.1%, to be effective June 1, 1983. See G. L. c. 176A, §§ 6 and 10; G. L. c. 176B, § 4. The filing was later revised, and the requested increase reduced to 22.3%. Blue Cross and Blue Shield, MAOA, the division, and the Attorney General participated in a public hearing beginning on April 11, 1983, and lasting eight and one-half days. On June 8, 1983, a deputy commissioner sitting as a hearing officer, see G. L. c. 26, § 7, issued her findings and order approving the revised Medex rates effective July 1, 1983, one month later than Blue Cross and Blue Shield had requested.

The Attorney General and MAOA, pursuant to G. L. c. 26, § 7, appealed to the commissioner, who, on August 30, 1983, issued a detailed decision both affirming the deputy commissioner's approval of the requested rate revision, and specifically endorsing the effective date of July 1, 1983. Further appeal was filed by MAOA under G. L. c. 176A, § 6, and G. L.

---

[4] This issue was presented at oral argument and by letter after oral argument, but was not raised before the commissioner. Subsequent to argument, however, G. L. c. 176A and c. 176B were amended to prohibit rate classifications based on age. See St. 1984, c. 199, §§ 2 and 6, amending G. L. c. 176A, § 6, and G. L. c. 176B, § 4. Because the contested surcharge was never implemented and now will not be implemented, both parties concede that this issue is moot. See *Monteiro* v. *Selectmen of Falmouth,* 328 Mass. 391, 392-393 (1952).

c. 176B, § 17.[5] A single justice of this court allowed a motion by Blue Cross and Blue Shield to intervene as defendants and reserved and reported the appeal for decision by the full court.

1. *Standard of Review.*

Because our review is premised upon the commissioner's proper exercise, in the first instance, of his statutory authority, we comment briefly on the scope of that authority. The commissioner does not fix Medex rates; he retains the power to review proposed rates but not to set them. See G. L. c. 176A, §§ 6, 10; G. L. c. 176B, § 4. Contrast G. L. c. 175, § 113B (commissioner shall fix and establish automobile insurance rates). The commissioner may not approve proposed rates which are "excessive, inadequate or unfairly discriminatory." G. L. c. 176A, § 6, as amended through St. 1984, c. 199, § 2. See G. L. c. 176A, § 10; G. L. c. 176B, § 4. "[H]e may not require that they be at the figures he finds reasonable. Necessarily there is a range of reasonableness and the statute[s] permit disapproval only if the Commissioner finds [the rates] to be outside that range." *Massachusetts Medical Serv.* v. *Commissioner of Ins.*, 344 Mass. 335, 339 (1962).[6] Moreover, "[t]he burden of furnishing evidence to enable the Commissioner to establish a range of reasonableness is on the insurers."

---

[5] A complaint was also filed by MAOA in the Superior Court seeking review of the commissioner's decision under G. L. c. 176B, § 12. See *Hathaway* v. *Commissioner of Ins.*, 379 Mass. 551, 553 (1980). That complaint has been transferred and consolidated with the county court action.

[6] In *Massachusetts Medical Serv.* v. *Commissioner of Ins.*, 344 Mass. 335 (1962), we held that the standard governing the commissioner's review of fee schedules for compensation of physicians under G. L. c. 176B, § 4, as appearing in St. 1960, c. 307, § 1, required approval if the fees were within a "range of reasonableness." *Id.* at 339. This conclusion was expressly based on our observation that the standard of review of such fee schedules was the same as that applicable to review of rates to members. *Id.* at 338-339. Accordingly, we have often cited the *Massachusetts Medical Serv.* decision as authority for the application of the "range of reasonableness" standard in other rate review contexts. See, e.g., *Workers' Compensation Rating & Inspection Bureau* v. *Commissioner of Ins.*, 391 Mass. 238, 245 (1984); *Liberty Mut. Ins. Co.* v. *Commissioner of Ins.*, 366 Mass. 35, 42 (1974). Thus, although this case involves rates, rather than fee schedules, the "range of reasonableness" standard announced in the *Massachusetts Medical Serv.* decision is applicable.

*Liberty Mut. Ins. Co.* v. *Commissioner of Ins.*, 366 Mass. 35, 42 (1974). Cf. *Workers' Compensation Rating & Inspection Bureau* v. *Commissioner of Ins.*, 391 Mass. 238, 245 (1984) (burden of proof on insurers to show that workmen's compensation rates fall within range of reasonableness); *Travelers Indem. Co.* v. *Commissioner of Ins.*, 362 Mass. 301, 305 (1972) (burden on automobile insurers to support rates).[7]

Our review of the commissioner's decision is governed both by G. L. c. 176A, § 6, and G. L. c. 176B, §§ 12, 17.[8] We examine those provisions in turn.

General Laws c. 176A, § 6, mandates public hearings after which "legal rights . . . of specifically named persons" (Blue Cross) are determined. *Borden, Inc.* v. *Commissioner of Pub. Health,* 388 Mass. 707, 716, cert. denied sub nom. *Formaldehyde Inst., Inc.* v. *Frechette,* 464 U.S 936 (1983). Those hearings are thus "adjudicatory proceedings" within the scope of G. L. c. 30A, § 1 (1), as amended by St. 1966, c. 497. See *Borden, Inc., supra.* See also *Newton* v. *Department of Pub. Utils.,* 339 Mass. 535, 542 (1959). Cf. *Associated Indus.* v. *Commissioner of Ins.,* 356 Mass. 279, 284-285 (1969). In reviewing proceedings under G. L. c. 176A, § 6, then, we are directed to the standards set forth in G. L. c. 30A, § 14 (7), and, consequently, we will not disturb the commissioner's decision unless it is "[u]nsupported by substantial evidence."[9]

---

[7] Massachusetts Association of Older Americans asserts that "[i]f a [rate] projection errs by more than 3%, it must be held to be outside the range of reasonableness generally accepted in reviewing rates." We decline to limit the "range of reasonableness" to a specific percentage because to do so would add to the statute a limitation which the Legislature did not see fit to enact and which might unduly hamper the commissioner's exercise of discretion. See *Workers' Compensation Rating & Inspection Bureau* v. *Commissioner of Ins., supra.*

[8] See notes 3 and 5, *supra.*

[9] Although G. L. c. 176A, § 6, as amended by St. 1953, c. 287, § 4, states in part that the "[supreme judicial] court . . . shall uphold the commissioner's . . . decision if supported by the *weight of evidence*" (emphasis supplied), the Legislature subsequently enacted St. 1954, c. 681, § 20, which provides that in the event of a conflict between the standard of review

Because G. L. c. 176B, §§ 12, 17, grant a right to review without specifying a standard,[10] our review "in these cases is limited to whether the evidence reasonably supports [the commissioner's] findings that the rates" were within the "range of reasonableness." *Workers' Compensation Rating & Inspection Bureau* v. *Commissioner of Ins., supra* at 245. See *Insurance Co. of N. Am.* v. *Commissioner of Ins.,* 327 Mass. 745, 752-753 (1951). See generally *Swan* v. *Superior Court,* 222 Mass. 542, 546-548 (1916).[11] "Reasonable support in the evidence" and "substantial evidence" are not "meaningfully" different. *Workers' Compensation Rating & Inspection Bureau, supra* at 244-245. In these circumstances, then, the standard of review required under G. L. c. 176B, §§ 12, 17, is substantial evidence, the same as that under G. L. c. 176A, § 6.

2. *Approval of Rates.*

a. *Medex rate setting methodology.* Rates for Medex insurance are set using a variant on the "conventional method" which acknowledges the nonprofit status of Blue Cross and

---

under G. L. c. 30A, and a standard under a particular statute, the standard set forth in G. L. c. 30A shall govern. Thus, we need not decide whether there is a conflict because, in any event, review under G. L. c. 30A, § 14 (7), is the "substantial evidence" standard. We review this matter on that basis. See *Boston Edison Co.* v. *Department of Pub. Utils., ante* 244, 249 n.8 (1984).

[10] General Laws c. 176B, § 4, "does not expressly require a hearing before the Commissioner." *Massachusetts Medical Serv.* v. *Commissioner of Ins.,* 344 Mass. 335, 339 (1962). For this reason, we have reserved judgment as to whether G. L. c. 30A applies to proceedings under that provision. *Id.* at 339-340 & n.1. We have concluded, however, that the standards of G. L. c. 30A, § 14 (7), do apply in so far as review of Medex rates is governed by G. L. c. 176A, § 6. We therefore examine c. 176B only to determine whether it imposes a broader standard upon the reviewing court.

[11] General Laws c. 176B, § 12, as amended through St. 1981, c. 623, § 3, provides in part that "decisions . . . of the commissioner . . . may be revised . . . upon a petition in equity filed . . . in the superior court." General Laws c. 176B, § 17, as amended by St. 1971, c. 434, § 3, provides in part that "[t]he provisions of . . . [c. 176B] may be enforced by a bill in equity brought in the supreme judicial court by . . . any aggrieved party." It is clear that neither of these provisions contemplates a fact-finding function on the part of reviewing courts. See *Hathaway* v. *Commissioner of Ins.,* 379 Mass. 551, 553 (1980) (§§ 12 & 17 authorize review only after contentions are "presented in the first instance to the Commissioner").

Blue Shield. Cf. *Attorney Gen.* v. *Commissioner of Ins.,* 370 Mass. 791, 796-797 (1976). An allowance for losses is determined by projecting for each Medex benefit the expected cost and frequency of claims. These projections are typically extrapolated from trends in historical ("internal") data, derived from actual Medex experience. Such projections are then modified by "external" factors in order to account for the impact of forces such as legislative changes not reflected in internal data. The rate charged to consumers is calculated on the basis of a "pure premium" for each benefit, adjusted for anticipated expenses and, in this case, reserve allowances.

On appeal, MAOA does not dispute the accuracy of the historical data employed by Blue Cross and Blue Shield in their projections. Rather, MAOA contends that the commissioner erred in failing to recognize certain external factors in his review of the proposed pure premiums, and in approving subscriber contributions to reserves. We address these arguments seriatim.

b. *Generic drug reduction factor.* Medex provides partial coverage of the costs of prescription drugs. Blue Cross and Blue Shield used both internal and external data in estimating the cost of this benefit. First, the internal trend was derived from projecting, on the basis of historical data, the number of such claims per subscriber, the number of prescriptions per claim, and the average charge per prescription. An external "reduction factor" was then applied to account for savings expected from an expansion of the list of generic drugs which may be substituted for costlier, brand-name drugs. The deputy commissioner rejected the final cost projection as "inadequate," finding that previous expansions of the list of interchangeable generic drugs had not consistently eased the increase in the cost of prescription drugs.[12] The commissioner agreed, explaining that "[t]he history of drug charge increases since 1977,

---

[12] The deputy commissioner found that the inadequacy of the projected pure premium for prescription drugs was compensated by Blue Cross and Blue Shield's excessive projections of other costs. She concluded "that the proposed rates conform to the requirements" of G. L. c. 176A, § 6, and G. L. c. 176B, § 4.

during which period generic drug lists were introduced and later expanded, does not inspire confidence that future charge increases will be slowed."

It is MAOA's claim that the commissioner's rejection of the proposed generic drug reduction factor is not supported by substantial evidence.[13] We disagree. The commissioner specifically noted Schedule 16 of the Medex filing, documenting the recent trend of prescription drug charges recorded on Medex claims. The list of interchangeable generic drugs had been expanded twice, first in May, 1979, and again in September, 1981. While the rate of increase did decline after the May, 1979, expansion, the more recent expansion in September, 1981, was followed by a substantial acceleration in the rise of prescription drug charges. Blue Cross and Blue Shield's actuary noted that "there is nothing in the numbers that demonstrate[s] that the generic list and the use of generic drugs has abated the increase in cost of prescription drugs."

We recognize that "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Cohen* v. *Board of Registration in Pharmacy,* 350 Mass. 246, 253 (1966), quoting *Universal Camera Corp.* v. *NLRB,* 340 U.S. 474, 488 (1951). Clearly, no party disputes the demonstrated increase in the cost of prescription drugs. Rather, MAOA merely challenges Blue Cross and Blue Shield's explanation of that increase. The record, however, need not reveal why a given trend has developed, so long as it supports the conclusion that such a trend in fact has emerged.

While we have declared that consideration of external factors is desirable in rate reviews, see *Massachusetts Auto, Rating & Accident Prevention Bureau* v. *Commissioner of Ins.,* 389 Mass.

---

[13] MAOA stresses that no party to the hearing suggested that prescription drug charges be projected without incorporating a reduction factor. But the commissioner's duty is to determine not only whether proposed rates may be excessive, but also whether they will be adequate. G. L. c. 176A, §§ 6, 10. G. L. c. 176B, § 4. See *Blue Cross of Mass., Inc.* v. *Commissioner of Ins.,* 392 Mass. 178, 182 (1984). His discretion, in this regard, cannot be limited by the arguments of the parties before him. Cf. *Massachusetts Auto, Rating & Accident Prevention Bureau* v. *Commissioner of Ins.,* 389 Mass. 824, 830-834 (1983) (approving commissioner's sua sponte decision to alter model used to estimate investment returns).

824, 840 (1983), we have also emphasized that cost predictions ordinarily must correlate with historical trends. See *Workers' Compensation Rating & Inspection Bureau* v. *Commissioner of Ins.*, 391 Mass. 238, 263-264 (1984). The undisputed evidence before the commissioner showed a substantial likelihood that incorporation of an external generic drug reduction factor would be inconsistent with historical trends. We conclude that the commissioner's rejection of the proposed generic drug reduction factor was supported by the evidence.

c. *Changes in Federal Medicare law*. Medex insurance is designed to supplement Medicare; thus, changes in Federal Medicare benefits are reflected in Medex coverage. 211 Code Mass. Regs. § 47.07 (1980). See *Blue Cross of Mass., Inc.* v. *Commissioner of Ins.*, 392 Mass. 178, 179 (1984). In their rate filing, Blue Cross and Blue Shield identified numerous changes which were expected to affect the cost of Medex coverage; several of these were taken into account by Blue Cross and Blue Shield in arriving at the proposed rates. Changes expected to have a small impact on costs — two of which would yield cost reductions — were not factored into the rates. At the hearing before the deputy commissioner, MAOA contended that the failure of Blue Cross and Blue Shield to include the expected savings in rate calculations resulted in excessive rates. The deputy commissioner, however, believed that "[i]t is proper that Blue Cross/Blue Shield be given some leeway in judging the importance of minor changes in Medicare provisions." The commissioner agreed.

We are asked by MAOA to reconsider this issue. We conclude that the limited "leeway" allowed Blue Cross and Blue Shield did not result in an excessive rate. The parties agree that the combined effect of the two disputed Medicare changes will be a saving of $0.13 per month per contract. An assistant actuary for Blue Cross and Blue Shield testified that these changes were within a range customarily not recognized in rate determination. He cited several examples of changes in Medicare law expected to cause cost increases too small to be considered in rate computation. Although these cost increases were not quantified, it was nevertheless reasonable for the

commissioner to conclude that they would at least partially offset the Medicare saving identified by MAOA. While the commissioner certainly has discretion to limit the extent to which minor factors may be ignored, see *Workers' Compensation Rating & Inspection Bureau* v. *Commissioner of Ins.*, *supra* at 264, we think the evidence here reasonably supported his conclusion that Blue Cross and Blue Shield's failure to account for these small changes did not bring the over-all rate outside the range of reasonableness.

d. *Contribution to general reserves.* The Medex rate proposal filed by Blue Cross and Blue Shield included a 1.25% contribution to general reserves to which MAOA objected on the ground that Blue Cross and Blue Shield had failed to demonstrate a need to augment existing reserves. The commissioner disagreed and approved the inclusion of the reserve contribution. Noting that Medex losses had played a disproportionate role in the recent "deterioration" of reserve levels, he concluded that Blue Cross and Blue Shield's request was "both prudent and justified."

On appeal, MAOA does not challenge this finding. At the hearing, the issue was substantial evidence; MAOA now concedes that there is substantial evidence to support the commissioner's decision. Rather it argues, for the first time, that "surplus funds", under G. L. c. 176A, § 24, means only those funds which result from an unanticipated excess of rate revenues over expenses and claims paid, and that Blue Cross may augment its reserves only when rate projections have been mistakenly overstated. Because that issue was not raised below, it is not properly before us. See *Murray* v. *Second Dist. Court of E. Middlesex,* 389 Mass. 508, 515 (1983); *Albert* v. *Municipal Court of the City of Boston,* 388 Mass. 491, 493 (1983). See also *Shamrock Liquors, Inc.* v. *Alcoholic Beverages Control Comm'n,* 7 Mass. App. Ct. 333, 335 (1979). Nothing in the record suggests that MAOA was precluded from raising this issue below, or that this is an "exceptional case" requiring our consideration even though the issue was not presented to

the commissioner.[14] See *Albert, supra* at 494, quoting *Hormel v. Helvering,* 312 U.S. 552, 557 (1941). In declining to reach this issue, we are "mindful of the deference due the commissioner's specialized knowledge, technical competence, and experience, regarding issues within the scope of his statutorily delegated authority." *Workers' Compensation Rating & Inspection Bureau* v. *Commissioner of Ins., supra* at 246. See *Massachusetts Auto, Rating & Accident Prevention Bureau* v. *Commissioner of Ins.,* 389 Mass. 824, 828 (1983).

3. *Effective Date.*

In her June 8, 1983, decision, the deputy commissioner ordered that the approved rate increase go into effect on July 1, 1983.[15] On review, the commissioner specifically endorsed the July 1 effective date. It is MAOA's final contention that the revised rates could not properly have taken effect until after August 30, 1983, the date on which the commissioner issued his written opinion affirming the deputy commissioner's decision. We disagree.

General Laws c. 26, § 7, as amended by St. 1964, c. 174, authorizes the commissioner to appoint deputies and assign to them "such duties as the commissioner may prescribe; provided, that any person aggrieved by any finding, ruling or decision rendered upon a hearing authorized by law held before a person other than the commissioner, may . . . appeal therefrom to the commissioner who shall review the case and may modify, affirm or reverse such ruling, finding or decision." Here, the commissioner delegated to his deputy the duty of reviewing rates under G. L. c. 176A, § 6, and G. L. c. 176B, § 4. There is no indication in the record that the commissioner intended to qualify that power in any way.

---

[14] Commencing with their 1984-1985 Medex rate filing, Blue Cross and Blue Shield now are prohibited by statute from including a subscriber contribution to reserves in rates charged to Medex enrollees. See St. 1984, c. 199, §§ 2 and 5, amending G. L. c. 176A, § 6, and G. L. c. 176B, § 4.

[15] We note that G. L. c. 176A, § 6, provides that rates may be "effective not earlier than thirty days subsequent to . . . approval." Here, the effective date followed the deputy commissioner's decision by only twenty-three days. Because MAOA makes no complaint in this regard, we have no occasion to decide whether there are circumstances in which the thirty-day period might properly be shortened.

However, MAOA points out that G. L. c. 176A, § 6, pro-
vides that Blue Cross rates shall not be charged until they
"have been approved in advance by the commissioner." Thus,
MAOA argues that Medex rates are inoperative until they have
been personally approved by the commissioner; it claims, in
effect, that G. L. c. 26, § 7, authorizes the deputy commis-
sioner to do no more than make recommendations to the com-
missioner. To the contrary, however, § 7 permits the commis-
sioner's designee to render a "decision" after presiding over a
"hearing authorized by law." Indeed, this provision anticipates
that the commissioner need take no action at all until and unless
a person aggrieved by the deputy's decision appeals to the
commissioner after the deputy's decision is rendered.[16]

Where the Legislature has sought to limit the role of a sub-
ordinate officer, it has done so expressly. For example, G. L.
c. 25, § 4, permits a hearing officer appointed by the commis-
sioners of the Department of Public Utilities only to "make a
report in writing . . . to the commission for its decision
thereon." See G. L. c. 31, § 43 (civil service appeal may be
referred to hearing officer for hearing and preparation of a
report to the Civil Service Commission). No similar limitation
exists under G. L. c. 26, § 7, and thus we find a more suitable
analogy in the scheme for review of compensation claims under
G. L. c. 151A, § 39. There, a review examiner acting for the
Director of the Division of Employment Security is authorized
to render a "decision," and unless an appeal is taken, that
decision is final. Benefits are "paid promptly or denied in
accordance with" the review examiner's decision. G. L.
c. 151A, § 39 (a), as appearing in St. 1976, c. 473, § 13. We
hold that the same rule obtains under G. L. c. 26, § 7. Thus,
decisions by persons appointed by the commissioner are final
unless appealed, and approved rates will take effect on the

---

[16] Such an appeal must be taken "within three days, or such further period
in any particular case as the commissioner may allow, after the filing of
such . . . decision in the office of the commissioner." G. L. c. 26, § 7.

date specified therein unless the commissioner specifically orders otherwise.[17]

Previous decisions of this court confirm our interpretation. In *Associated Indus.* v. *Commissioner of Ins.*, 356 Mass. 279, 281 (1969), the chief actuary of the division, acting under G. L. c. 26, § 7, issued a decision approving workmen's compensation rates and setting an effective date for the new rates. General Laws c. 152, § 52, governing workmen's compensation rate reviews, provides that "such rates shall not become effective until approved by the Commissioner." *Associated Indus.*, *supra* at 283. Although there was nothing in the record to indicate that "the Commissioner himself adopted the chief actuary's opinion and approved the rates," and thus no indication of when he did so, the court assumed that he had, stating that the better practice would be for the commissioner to "issue a document to that effect." *Id.* at 286. The court nonetheless affirmed "the Commissioner's approval" and, at the same time, the effective date set by the chief actuary. *Id.* See *Insurance Co. of N. Am.* v. *Commissioner of Ins.*, 327 Mass. 745, 751 (1951) (commissioner reversed deputy commissioner's decision and ordered insurance company to cease and desist from practice approved in deputy's decision); *Maryland Casualty Co.* v. *Commissioner of Ins.*, 372 Mass. 554, 558 (1977) (commissioner affirmed deputy's order, modifying only effective date).

Our reading of G. L. c. 26, § 7, is also consistent with the commissioner's own construction of that provision. "The interpretation of the Commissioner is not binding on us, but is entitled to some weight . . . and the consistent administrative construction of a statute permitting more than one possible interpretation is of added significance." *American Family Life Assurance Co.* v. *Commissioner of Ins.*, 388 Mass. 468, 474-475, cert. denied sub nom. *American Family Life Assurance Co.* v. *Hiam*, 464 U.S. 850 (1983) (quoting *Metropolitan Property & Liab. Ins. Co.* v. *Commissioner of Ins.*, 382 Mass. 514, 523 [1981]).

---

[17] Of course, this rule would not apply where the commissioner has limited the authority delegated to his subordinate, as, for example, where the commissioner seeks only a recommendation.

We conclude that Blue Cross and Blue Shield were lawfully authorized to begin charging increased rates on the effective date set by the deputy commissioner, July 1, 1983. Judgment shall enter in the county court affirming the commissioner's decision.

*So ordered.*