MASSACHUSETTS AUTO BODY ASSOCIATION, INC. *vs.*
COMMISSIONER OF INSURANCE.

Suffolk. January 8, 1991. - April 17, 1991.

Present: LIACOS. C.J., NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Insurance*, Motor vehicle insurance, Commissioner of Insurance. *Adminis-trative Law*, Regulations, Emergency regulations, Judicial review, Hearing, Standing. *Regulation*.

A regulation promulgated by the Commissioner of Insurance providing for a waiver of the requirement that an insurer's repair shop referral list include at least five shops, 211 Code Mass. Regs. § 123.06 (2) (c), was a valid exercise of the commissioner's broad authority to implement the direct payment and repair shop referral components of St. 1988, c. 273, the Automobile Insurance Reform Act. [774-776]

A regulation promulgated by the Commissioner of Insurance to implement the Automobile Insurance Reform Act, St. 1988, c. 273, allowing sup-plemental payments to repair shops to which claimants have already been referred, 211 Code Mass. Regs. § 123.06 (3) (a) (ii), did not on its face conflict with the provisions of the act. [776-778]

A regulation promulgated by the Commissioner of Insurance to implement the Automobile Insurance Reform Act, St. 1988, c. 273, allowing re-pair shops to offer discounts to insurers on parts and labor, 211 Code Mass. Regs. § 123.06 (8) (a) & (8) (c), did not violate provisions of §§ 24 & 51 of the act prohibiting illegitimate kickbacks or on its face conflict with G. L. c. 100A, § 8 (*c*). [778-779]

There was no merit to a challenge to the promulgation, on an emergency basis, of certain regulations by the Commissioner of Insurance. [779-780]

A plaintiff in a declaratory action demonstrated neither harm to its sub-stantial rights, nor its status as a "person aggrieved," in its attempt to challenge on procedural grounds the action of the Commissioner of In-surance in approving insurers' plans submitted pursuant to regulations implementing the Automobile Insurance Reform Act, St. 1988, c. 273 [780-781], nor did the plaintiff show that the commissioner's interpre-tation of the regulation with respect to the timing of hearings on those plans was arbitrary, unreasonable or inconsistent [781].

The Commissioner of Insurance had discretion to approve insurers' plans, submitted pursuant to regulations implementing the Automobile Insur-

ance Reform Act, St. 1988, c. 273, subject to assurances given by the insurers' counsel at the hearings on the plans. [781-782]

CIVIL ACTION commenced in the Superior Court Department on January 27, 1989.

The case was heard by *Elbert Tuttle*, J., on a statement of agreed facts.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*James A. Castleman* for the plaintiff.

*Ruth A. Bourquin*, Assistant Attorney General, for the Commissioner of Insurance.

*E. Michael Sloman* for Automobile Insurers Bureau of Massachusetts.

*Acheson H. Callaghan, Jr.*, for The Kemper National Property & Casualty Companies, was present but did not argue.

*Stuart T. Rossman*, for Arbella Mutual Insurance Company, joined in a brief.

LYNCH, J. This appeal concerns the validity of regulations promulgated by the Commissioner of Insurance to implement the direct payment and repair shop referral components of St. 1988, c. 273, the Automobile Insurance Reform Act of 1988, and of insurers' plans submitted and approved pursuant to those regulations.

The plaintiff, the Massachusetts Auto Body Association, Inc.[1] (association), sought a declaration in the Superior Court that emergency and final regulations, 211 Code Mass. Regs. § 123.00 (1989), issued by the commissioner exceeded the scope of his statutory authority; that there was insufficient reason for issuance of the emergency regulation; and that direct payment plans submitted by the defendants, Arbella Mutual Insurance Company (Arbella), The Kemper

---

[1] The plaintiff is a trade association with a membership of about 680 of the approximately 2,000 auto body repair shops in Massachusetts.

National Property & Casualty Companies[2] (Kemper), and the Massachusetts Automobile Rating and Accident Prevention Bureau (bureau),[3] were improperly approved by the commissioner. On a statement of agreed facts, the Superior Court judge ordered judgment for the defendants, and the plaintiff appealed. We transferred the case to this court on our own motion, and we now affirm.

On November 5, 1988, the Legislature enacted, with emergency preamble, St. 1988, c. 273, the so-called Automobile Insurance Reform Act (act), the purpose of which was to lower the cost of automobile insurance premiums by restructuring the automobile insurance system in a number of ways. Prior to passage of the act, insurers could pay a claim for repairs only after the insured had certified the repairs had already been completed. Sections 24 and 51 of the act, effective January 1, 1989, allow insurers for the first time to file plans for approval by the commissioner under which they can make direct payment to the insured for certain covered losses, prior to completion of repair work.[4] Those sections allow the commissioner to require that any such plan provide that the insured will be given a referral list of repair shops which can do the required repair work for the amount of the payment to the insured, plus any applicable deductible. The sections allow the commissioner to promulgate rules and regulations he deems necessary for implementation of the direct payment system.

In November, 1988, the bureau and Arbella filed direct payment plans with the commissioner for his approval. On December 8, 1988, the commissioner issued on an emergency

[2]Lumbermens Mutual Casualty Company, American Manufacturers Mutual Insurance Company, American Motorists Insurance Company, and American Protection Insurance Company, doing business as The Kemper National Property & Casualty Companies.

[3]The bureau, an insurance rating organization, has since changed its name to the Automobile Insurers Bureau of Massachusetts.

[4]The portions of §§ 24 and 51 at issue are virtually identical in every respect, except that § 24 amended G. L. c. 90, § 34O, and § 51 amended G. L. c. 175, § 113O.

basis and without public hearing, a regulation governing direct payment plans and referral repair shop programs, 211 Code Mass. Regs. § 123.00. Before issuing the emergency regulation, the commissioner's staff met several times with interested persons, including at least twice with representatives of the plaintiff association. On December 8, the commissioner gave notice that a hearing on approval of the bureau and Arbella plans would be held on December 22, 1988.

On December 15, 1988, Kemper filed a direct payment plan for the first time, and Arbella and the bureau filed revised plans. According to the association, it was notified for the first time on December 20, 1988, that Kemper had filed a plan, that the bureau and Arbella had filed revised plans, and that the hearing on December 22 would be for approval of the newly filed plans.

The December 22 hearing was not conducted as an adjudicatory proceeding. The association participated in the hearing, giving oral and written testimony. Subsequently, the commissioner approved all three plans.

In January, 1989, the commissioner gave notice and held a hearing regarding the approval of 211 Code Mass Regs § 123.00 as a final regulation. The association participated in that hearing. In February, 1989, the commissioner issued 211 Code Mass. Regs. § 123.00 as a final regulation. The challenged portions of the regulation are the same in both emergency and final form.

1. *Substantive challenges to the regulation.* The association challenges three provisions of the regulation: (1) the allowance of a transition period and a waiver concerning the number of repair shops on an insurer's referral list, 211 Code Mass. Regs § 123.06 (2) (a); (2) the allowance of supplemental payments for unexpected damage, 211 Code Mass. Regs. § 123.06 (3) (a) (ii); and (3) a provision permitting repair shops to offer discounts on parts, glass, labor rate or other item or customer service, 211 Code Mass. Regs. § 123.06 (8) (b). The association contends these provisions violate the following statutory language, referring to direct payment plans:

"The commissioner *may* require any plan filed pursuant to the preceding paragraph to provide (a) that the insured will be given a list of *at least five* registered repair shops, geographically convenient for the insured, from which the insured may at his or her option select a shop, which will without undue delay complete the repair work *for the amount of the payment to the insured*, plus any applicable deductible . . . .

. . .

"(e) . . . No repair shop, or employee, owner or agent thereof, shall give or pay, or offer to give or pay, *any thing of value* to any person *in exchange for being included, or as an inducement to be included*, on such a list of repair shops . . ." (emphasis added).

St. 1988, c. 273, § 24, 4th par.; § 51, 3d par.

a. *Transition period and waiver.* The regulation promulgated by the commissioner does require all plans to provide that insurers give insureds a list of at least five repair shops, with two exceptions. First, it allowed a one-year transition period in 1989, during which insurers were permitted to have fewer than five shops on their referral lists while they built up the lists to reach the five-shop minimum. 211 Code Mass. Regs. § 123.06 (2) (a). Second, it provides that, even after the transition period, insurers may petition for a waiver of the five-shop minimum based on "specific facts regarding market share, geographic location, availability of repair shops, or other circumstances." 211 Code Mass. Regs. § 123.06 (2) (c). The association contends that both the transition period and the waiver provision go beyond the commissioner's statutory authority.

The transition period expired at the end of 1989, making the question of its validity moot. See *Lockhart* v. *Attorney Gen.*, 390 Mass. 780, 782 (1984); *Wolf* v. *Commissioner of Pub. Welfare*, 367 Mass. 293, 298 (1975). Because it is not capable of repetition, we need not address the issue further. *Lockhart*, *supra* at 783-785. *Stokes* v. *Superintendent*,

*Mass. Correctional Inst., Walpole*, 389 Mass. 883, 887 (1983).

With respect to the waiver provision, the association argues that the word "may" in the relevant statutory language gives the commissioner discretion only so far as the choice whether to implement a referral list program. Once he chooses to implement such a program, it is argued, the commissioner has no discretion to permit any list to name fewer than "at least five" shops under any circumstances.[5]

"[W]e must apply all rational presumptions in favor of the validity of the administrative action and not declare it void unless its provisions cannot by any reasonable construction be interpreted in harmony with the legislative mandate." *Consolidated Cigar Corp.* v. *Department of Pub. Health*, 372 Mass. 844, 855 (1977). Furthermore, when an agency is given "a broad grant of authority to implement a program of reform or social welfare, the administrative agency generally has a wide range of discretion in establishing the parameters of its authority pursuant to the enabling legislation." *Levy* v. *Board of Registration & Discipline in Medicine*, 378 Mass. 519, 525 (1979). See *School Comm. of Wellesley* v. *Labor Relations Comm'n*, 376 Mass. 112, 116 (1978).

The commissioner interprets the statutory language, stating what he "may" require any plan to provide, as giving him discretion to decide what the direct payment plans should include. The contrasting mandatory language in a preceding paragraph supports this interpretation. There, the statute requires that a direct payment plan

> "*shall* not be approved unless it: (a) provides for a procedure acceptable to the commissioner to resolve any dispute between the insured and the insurer as to the adequacy of the payment; (b) provides for adequate disclosure to the insured of his or her rights hereunder;

---

[5]The association notes in its brief that some waivers have been granted, without hearing. Whether those waivers have been properly granted by the commissioner is not before us in this appeal.

and (c) contains such other terms and conditions as the commissioner shall prescribe" (emphasis added).

St. 1988, c. 273, § 24, 2d par.; § 51, 2d par.

In addition to giving the commissioner discretion to decide whether to implement a referral list system at all, and authority to prescribe what terms and conditions direct payment plans shall contain, the statute also expressly grants the commissioner "authority to promulgate such rules and regulations as he deems necessary for the implementation" of a direct payment system. St. 1988, c. 373, § 24, 3d par.; § 51, 2d par. The commissioner concluded that a waiver provision was necessary for the referral list program to be implemented at all in geographical areas with a small number of registered repair shops. The commissioner could reasonably interpret the broad authority granted him to implement the statute as permitting him to make an adjustment such as the waiver provision rather than deny insureds in those areas the benefits of a referral list system.[6]

b. *Supplemental payment.* The regulation provides for approval of plans under which shops will complete repair work "for the amount of the direct payment to the insured plus any applicable deductible, plus any supplemental payment authorized by the insurer." 211 Code Mass. Regs. § 123.06 (3) (a) (ii). The "direct" payment is the amount paid to the insured before the repair is completed, based on the insurer's initial appraisal. 211 Code Mass. Regs. § 123.05 (1). A supplemental payment may be made only after a claimant disputes the initial appraisal as underestimating the actual cost of repairs. See 211 Code Mass. Regs. § 123.05 (3). This may occur when, for instance, damage is discovered during the repair process which was not visible at the time of the initial appraisal.

---

[6]We note that the regulation makes it reasonably easy for a repair shop to be included on a referral list so long as it agrees to comply with an insurer's direct payment plan, and provides safeguards against a shop being improperly excluded by an insurer. See 211 Code Mass. Regs. 123.06 (3) (6).

The association claims that the language of the act, authorizing the commissioner to approve plans under which shops will complete repair work "for the amount of the payment to the insured plus any applicable deductible," permits only a single pre-repair payment in the amount of the initial appraisal, plus any deductible, and no further payment. The association argues that allowing supplemental payments to shops to which the claimants have already been referred puts them at an unfair competitive advantage: shops will dishonestly claim they can complete repairs for the amount of the initial appraisal, intending to get a supplemental payment later, in order to lure business away from shops which admit from the start that they cannot complete the work for the appraisal amount.[7]

We must uphold the regulation if it can be interpreted in harmony with the act by any reasonable construction. *Consolidated Cigar Corp.* v. *Department of Pub. Health*, 372 Mass. 844, 855 (1977). The supplemental payment provision can easily be interpreted as in harmony with the act. The act is silent as to precisely how or when "the payment to the insured" shall be made, and does not prohibit supplemental payments of the type authorized by the regulation. Moreover, the act expressly requires that no direct payment plan shall be approved "unless it . . . provides for a procedure acceptable to the commissioner to resolve any dispute between the insured and the insurer as to the adequacy of the payment." St. 1988, c. 373, § 24, 2d par. (a); § 51, 2d par. (a). It is difficult to imagine how certain disputes about the adequacy of payment could be resolved without some provision for supplemental payment.

In response to the association's concerns about shops on referral lists receiving an unfair advantage, we note that a

---

[7]In its written comments to the commissioner regarding the regulation, the association stated: "War stories abound within the industry relating to work being taken out of legitimate repair shops because an insurer says that it has another shop that will do the work for its price, followed by supplemental payments to such second shop that cause the total cost of repairs to greatly exceed the appraisal made by the first shop."

claimant who successfully disputes the initial appraisal is entitled to a supplemental payment whether or not the repair shop he or she has used is on the referral list.[8] See 211 Code Mass. Regs. § 123.05 (3). Whether insurers will approve supplemental payments evenhandedly is not before us in this case. We decide here only that the provision, on its face, does not conflict with the act.

c. *Discount.* The regulation mirrors part (e) of the relevant sections of the act by stating: "No repair shop, or employee, owner or agent thereof, shall give or pay, or offer to give or pay, any thing of value to any person in exchange for being included, or as an inducement for being included, on an insurer's list of repair shops." 211 Code Mass. Regs. § 123.06 (8) (a). The regulation, however, goes on to provide: "A discount on parts, glass, labor rate or other item or customer service in connection with the repair of motor vehicles offered by a repair shop to an insurer shall not constitute a 'payment, gift or any other thing of value' for purposes of [the previous subsection]." 211 Code Mass. Regs. § 123.06 (8) (b).

The association claims this provision violates part (e) of § 24, 4th par., and § 51, 3d par., of the act. The commissioner argues that an arrangement negotiated between an insurer and a repair shop for a bona fide discount on certain repair costs does not constitute the kind of illegitimate kickback, unrelated to services provided, that part (e) was meant to prohibit. On the contrary, the commissioner claims, it reflects a continuation of the commissioner's practice, approved by this court in *Massachusetts Auto. Rating & Accident Prevention Bureau* v. *Commissioner of Ins.*, 401 Mass. 282, 299-301 (1987), of encouraging insurance companies to negotiate with repair shops for reduced repair costs. Given the

---

[8]If the repair is made at a shop on the insurer's referral list, however, the claimant is not required to pay more than the amount of the direct payment plus any applicable deductible to have the work completed, and any dispute as to the amount of the appraised damage must be resolved between the referral shop and the insurer. 211 Code Mass. Regs. § 123.05 (3) (d).

fact that the act's purpose was to promote lower insurance costs, and that the act explicitly allows an insurer to consider the cost of repairs at a particular shop in determining which repair shops shall be included on its referral lists, St. 1988, c. 273, § 24, 4th par. (d); § 51, 3d par. (d), the commissioner's interpretation is not unreasonable.

The association also claims the provision conflicts with G. L. c. 100A, § 8 (c) (1988 ed.),[9] which states that no registered automobile repair shop shall "charge or offer to charge a higher rate or discount for an insured repair than for an uninsured repair." Since nothing in the regulation prevents a repair shop from offering the same discount to an uninsured customer, we cannot say that, on its face, the provision conflicts with G. L. c. 100A, § 8.

2. *Emergency regulation.* Initially, in December, 1988, 211 Code Mass. Regs. § 123.00 was promulgated as an emergency regulation. The association claims the emergency regulation was invalid under G. L. c. 30A, § 7 (1988 ed.), because the commissioner did not have sufficient reason for issuing it on an emergency basis. We disagree.

Because the emergency regulation was replaced by a final regulation in February, 1989, this procedural objection is, arguably, moot.[10] However, even if reviewed on its merits, the association's argument would fail. In *American Grain Prods. Processing Inst.* v. *Department of Pub. Health*, 392 Mass. 309, 323 (1984), this court held that an agency's finding of an emergency is given every presumption in its favor and is not subject to question unless palpably wrong. In the instant case the commissioner deemed the emergency regulation nec-

___

[9]This provision was also inserted by St. 1988, c. 273.

[10]The association argues the issue is not moot where the direct payment plans approved under the emergency regulation depend for their validity upon the upholding of the rationale for the emergency. However, the commissioner was authorized to approve the plans whether or not any regulations were in effect, St. 1988, c. 273, §§ 24 and 51, 2d pars., and the plans would have been approved under the identical final regulations at any rate. The association also argues that the issue of sufficiency of the reason for an emergency regulation evades review if it can be rendered moot by the agency quickly replacing the emergency regulation with a final regulation.

essary to get the direct payment system into place quickly, so that savings could be realized and consumers could benefit from lower insurance rates in 1989, as the Legislature intended. If the agency's reason for the emergency regulation in *American Grain Prods.* withstood challenge, it certainly must do so here. Furthermore, the Legislature itself specifically acknowledged the emergency. The act's preamble declares it to be "an emergency law," the deferred operation of which "would tend to defeat its purpose" immediately to lower the cost of automobile insurance premiums.

3. *Approval of insurers' plans.* The association raises two procedural challenges to approval by the commissioner of the defendant insurers' plans. First, it claims, for the first time on appeal, that the hearing on approval of the plans should have been an adjudicatory proceeding, but even if the hearing was not required to be adjudicatory, it did not follow the proper procedures even for a rulemaking proceeding. Second, the association claims the agency violated its own requirement, at 211 Code Mass. Regs. § 123.04 (5), of ten days' advance notice of a hearing for approval of the Kemper and Arbella plans.

In order successfully to challenge the agency's action based on procedural errors, the association must demonstrate that the errors have harmed its substantial rights. *Amherst-Pelham Regional School Comm.* v. *Department of Educ.*, 376 Mass. 480, 497 (1978). The association fails to make this showing. It participated in the hearing with both oral and written comments, and, except for the claim that the hearing should have been adjudicatory, it raises no new objections on appeal that it did not raise at the hearing.

Even if the association could make a showing of substantial harm, however, its procedural objection would fail. We could not decide the merits of the first objection because, if the hearing was adjudicatory, the association is not a "person aggrieved" by the decision and cannot appeal it. At best, some of the association's members *may* suffer competitive injury as a result of *implementation* of the plans. This is too indirect and speculative an effect to make the association a

"person aggrieved." See *Group Ins. Comm'n* v. *Labor Relations Comm'n*, 381 Mass. 199, 204 (1980); *Shaker Community, Inc.* v. *State Racing Comm'n*, 346 Mass. 213 (1963). If, on the other hand, the hearing was a rulemaking proceeding, the association was a party and waived its right to challenge the conduct of the hearing because it did not raise the issue before the agency. See *Vaspourakan, Ltd.* v. *Alcoholic Beverages Control Comm'n*, 401 Mass. 347, 354 (1987); *Massachusetts Ass'n of Older Americans, Inc.* v. *Commissioner of Ins.*, 393 Mass. 404, 413-414 (1984).

With regard to the second procedural objection, the commissioner argues that ten days' advance notice was required only for plans filed to become effective *after* January 1, 1989. With respect to plans filed to become effective on January 1, 1989, including the three plans at issue here, the commissioner had only to "schedule the hearing thereon for such date as will allow full and fair consideration of the plan[s]."[11] 211 Code Mass. Regs. § 123.04 (5). In the absence of clear error, an agency's interpretation of its own rule is entitled to deference. We will overturn such an interpretation only if it is arbitrary, unreasonable, or inconsistent with the plain terms of the rule itself. *Purity Supreme, Inc.* v. *Attorney Gen.*, 380 Mass. 762, 782 (1980). See *Northbridge* v. *Natick*, 394 Mass. 70, 74 (1985). The commissioner's interpretation of his regulation in this case was not arbitrary, unreasonable, or inconsistent.

Finally, the association claims the Kemper and Arbella plans should not have been approved because they did not

---

[11]The emergency regulation states, in pertinent part: "*Timing of Hearing*: With respect to any plan for which a hearing is required and which is filed to be effective on January 1, 1989, the Commissioner shall schedule the hearing thereon for such date as will allow a full and fair consideration of the plan . . . . With respect to any other plan for which a hearing is required, the Commissioner shall schedule the hearing thereon to begin no less than 21 days after the plan is filed. The party filing the plan and other persons affected shall be notified of the date of the hearing at least ten days in advance." 211 Code Mass. Regs. § 123.04 (5).

meet the substantive requirements of the regulation.[12] The regulation states: "No plan shall be approved unless it contains each of the following [specified] provisions." 211 Code Mass. Regs § 123.05. However, the Kemper and Arbella plans do not contain any of the guidelines for inclusion of shops on their referral lists set out in 211 Code Mass. Regs. § 123.06.[13] The plans do provide for repair certification forms that notify insureds of their right to be given a list of repair shops. Also, in his decisions approving each of the plans, the commissioner asserted that the statement of Kemper and Arbella's representative submitted at the hearing "assures the Division that [Kemper and Arbella's] direct payment plan[s] will include a referral shop program which will follow the timetable and other requirements of 211 Code Mass. Regs. 123.06." The commissioner directed Kemper and Arbella to incorporate counsel's statement into their plans, "thereby binding [them] to the regulations governing the nature and operation of referral shop programs."

Counsel's statement is not in the record before us. The association does not say in its brief that the referral shop component would be insufficient even with counsel's statement, but in its complaint it says, "Although the commissioner's decisions mandate the inclusion of such a component in the Kemper and Arbella plans, approval of such plans is given without revelation of the specifics of such component." The commissioner had discretion to approve the plans subject to the assurances given by counsel at the hearing. If the association wishes to contest the implementation of the plans as being contrary to counsel's assurances, it may raise that issue before the commissioner.

For the foregoing reasons, the judgment of the Superior Court is affirmed.

*So ordered.*

---

[12]The association's substantive objections to the plans to the extent they incorporate the challenged provisions of the regulation are answered by our analysis of those provisions, above.

[13]The original versions of each of the plans did contain such guidelines.