HIGHLAND TAP OF BOSTON, INC., & another
*vs.* CITY OF BOSTON & another.[1]

No. 88-P-116.

Suffolk. June 2, 1988. — July 27, 1988.

Present: DREBEN, KASS, & FINE, JJ.

*Practice, Civil,* Interlocutory appeal, Injunction. *Injunction. Public Enter-*
*tainment. Constitutional Law,* Freedom of Speech, Public entertainment.

On appeal from a single justice's order enjoining the city of Boston and one of
its licensing officials from revoking or suspending the entertainment
license held by the operator of a certain eating and drinking establish-
ment, and from interfering with the presentation on the licensee's prem-
ises of nude dance entertainment, a panel of this court, construing the
order so as to permit the defendants to proceed with a hearing pursuant
to G. L. c. 140, § 183A, concluded that the single justice had not abused
his discretion in ordering injunctive relief pending a trial of the merits
of the licensee's constitutional and statutory claims. [241-244]

CIVIL ACTION commenced in the Superior Court Department
on December 29, 1987.

A petition seeking relief from an interlocutory order was
heard in the Appeals Court by *Greaney,* C.J.

*Timothy P. O'Neill (Susan M. Donnelly* with him) for the
defendants.

*Kenneth H. Tatarian* for the plaintiff.

FINE, J. This is an appeal by the commissioner of the mayor's
office of consumer affairs and licensing (commissioner) and
the city of Boston (city) from an order for a preliminary injunc-
tion entered on January 26, 1988, by a single justice of this
court. The order enjoined the commissioner and the city from
revoking or suspending the current (1988) entertainment license

---

[1] The commissioner of the mayor's office of consumer affairs and licensing
of the city of Boston.

of the plaintiff, Highland Tap of Boston, Inc. (Highland Tap), and from interfering in any way with the plaintiff's presentation of floor shows which include nude dancing. A Superior Court judge had denied a request by Highland Tap for similar injunctive relief on January 12, 1988. We review the single justice's order "in the same manner as if it were an identical order by the trial judge considering the matter in the first instance" and without regard to the trial judge's earlier contrary order. *Jet-Line Servs. Inc.* v. *Selectmen of Stoughton*, 25 Mass. App. Ct. 645, 646 (1988). Thus, we ask whether the single justice abused his discretion by entering an order without having a supportable basis for doing so. See *Carabetta Enterprises Inc.* v. *Schena*, 25 Mass. App. Ct. 389, 392 (1988). We find a supportable basis for the single justice's order as we narrowly construe it.

Highland Tap is an eating and drinking establishment located in the Roxbury section of Boston, which is outside the district designated in the Boston zoning code as an adult entertainment district. The club has offered live entertainment, including nude dancing, almost continuously since the end of 1979. At all relevant times it has held alcoholic beverage and common victualler's licenses, and, since prior to 1979, it has held an entertainment license issued pursuant to G. L. c. 140, § 183A. Almost immediately after the club started offering nude dancing, the city, through its licensing authorities, sought to prevent the club from doing so. The city's effort became the subject of litigation, and the effort to prevent the presentation of nude dancing was stymied by the issuance of several preliminary injunctions against the city, see Highland Tap of Boston, Inc. *vs.* Gargiulo, Superior Court, Suffolk County, No. 42026 (1980, 1984), and by the determination, eventually, that G. L. c. 140, § 183A, as it existed prior to the effective date of a revision by St. 1981, c. 694, § 1, was unconstitutionally overbroad and vague, see *Venuti* v. *Riordan*, 521 F. Supp. 1027, 1031 (D. Mass. 1981). In the Superior Court case, a judge ruled in 1985, with respect to Highland Tap's licenses for the calendar years 1980 through 1985, that the city and the commissioner could not interfere with the club's nude dancing activities because both G. L. c. 140, § 183A, as it existed prior

to the 1981 revision, and a licensing regulation promulgated by the city, prior to its alteration in 1983, under which the city had proceeded, were unconstitutional prior restraints. The judge also held that the new statutory scheme was constitutional on its face but that questions of fact existed as to its application to the instant situation. The case was dismissed by agreement of the parties before resolution of the factual issues and entry of final judgment.

The present litigation arose out of two actions taken by the commissioner on December 28, 1987. One concerned the license for 1987; it is probably now moot. With regard to the club's application for an entertainment license for 1988, on which the club noted its intention to provide nude dancing, the commissioner determined that an entertainment license would issue but that it would be subject to the terms and conditions set forth in the license and to the zoning code. Thus, the right to have nude dancing, according to the decision, would be conditioned upon a favorable determination after a public hearing under G.L. c. 140, § 183A. The relevant health and safety factors set forth in the seventh paragraph of that section would be determinative.

Although nude dancing implicates First Amendment considerations, there is some scope for valid regulation. See *California v. LaRue*, 409 U.S. 109, 118 (1972); *Doran v. Salem Inn Inc.*, 422 U.S. 922, 932 (1975); *New York State Liquor Authy. v. Bellanca*, 452 U.S. 714, 716 (1981). Compare *Commonwealth v. Sees*, 374 Mass. 532, 537 (1978), and *Cabaret Enterprises, Inc. v. Alcoholic Beverages Control Commission*, 393 Mass. 13, 17 (1984), discussing the limits of valid regulation of nude dancing under art. 16 of our Declaration of Rights (as amended by art. 77 of the Amendments to the Massachusetts Constitution). The defendants urge that we adopt the view of the Superior Court judge who presided over the earlier litigation between Highland Tap and the city's licensing authorities and rule that the presently existing statutory scheme, set out in the appendix, is at least facially valid. Highland Tap, on the other hand, still challenges the statutory scheme on constitutional grounds; it contends that the statute does not

authorize a separate license for nude dancing and, therefore, that its entertainment license affords it the right to offer that form of entertainment without interference; and it claims that the defendants did not comply with the requirement in the statute that they provide the opportunity for a hearing within forty-five days of the receipt of the application for the 1988 license.[2] Also, to the extent that the defendants are relying upon the existence of an established zone for adult entertainment, Highland Tap argues that the commissioner is not the official named in Section 5-1 of the Boston Zoning Code (as amended through April 30, 1985), as authorized to enforce zoning requirements. Compare G.L. c. 40A, § 7.

Although it would not be appropriate for us to rule finally on the complicated issues in the case at this preliminary stage of the proceedings, we note that the constitutional shortcomings found in the preexisting statutory scheme may have been cured.[3] Moreover, there is growing support for the right of municipalities through the use of their zoning power to limit adult entertainment to certain defined geographic areas. See *Young* v. *American Mini Theatres, Inc.*, 427 U.S. 50, 71-73 (1976); *Renton* v. *Playtime Theatres, Inc.*, 475 U.S. 41, 52 (1986); *Northend Cinema, Inc.* v. *Seattle*, 90 Wash. 2d 709, 717-719 (1978). We would be hesitant to state, therefore, that Highland Tap is likely to prevail ultimately on the merits of its constitutional claim insofar as it seeks to prevent the city's

---

[2] This argument is made for the first time on appeal. We decline, therefore, to comment on whether it might have validity. See *Royal Indem. Co.* v. *Blakeley,* 372 Mass. 86, 88 (1977); *Lexington* v. *Bedford,* 378 Mass. 562, 568 (1979).

[3] General Laws c. 140, § 183A (as in effect prior to St. 1981, c. 694, § 1), was declared unconstitutional because it "on its face delegate[d] complete discretion to licensing authorities and contain[ed] no standards whatsoever." *Venuti* v. *Riordan,* 521 F. Supp. at 1031. To be constitutionally valid, a licensing scheme which functions as a prior restraint must operate within "narrow, objective, and definite standards." *Shuttlesworth* v. *Birmingham,* 394 U.S. 147, 151 (1969). General Laws c. 140, § 183A, as appearing in St. 1981, c. 694, § 1, allows licensing authorities to deny licenses, after a public hearing, only if a determination is made that a granting of the license would adversely affect the public health, safety, or order for reasons of noise level, pedestrian and vehicular traffic, parking, or criminal activity.

licensing authorities from holding a hearing to consider the factors outlined in G.L. c. 140, § 183A (7th par.), and to determine whether to grant the club's application for a license to provide entertainment including nude dancing. Highland Tap, however, may have meritorious statutory claims regarding the scheduling requirements for a public hearing concerning a license and the ability of the commissioner to enforce zoning requirements. These issues, as well as the constitutional claims, are best resolved at trial.

The single justice, recognizing that First Amendment rights were implicated, appropriately expressed his concern for preserving the status quo pending a full trial on the merits. His order accomplished that objective. It is not controverted that the club now has been providing nude dancing entertainment almost continuously for eight years. If the club has never had the blessings of the licensing authorities to do so, it has had, for most of the intervening period, the protection of court orders. To allow the city now to interfere with that right would be an alteration, in fact, of the status quo, with at least a possibility of interference with First Amendment rights of the club and its patrons.

The order by its terms prevented the defendants from "taking any action to revoke or suspend the current entertainment license" issued with qualifications by the commissioner under the December 28, 1987, decision, or "interfering in any way with the presentation . . . of a floor show which includes nude dance entertainment." It does not expressly prohibit the defendants from holding a public hearing under G.L. c. 140, § 183A, although that appears to be what the single justice intended and how the parties interpreted the order. To the extent that the order may be interpreted as enjoining the defendants from holding a public hearing to consider the health and safety factors set forth in the statute, we would modify it. With respect to the city's authority to hold such a hearing, we differ with the single justice. He expressed doubt in his decision whether the defendants could, on the basis of a hearing, revoke the 1988 entertainment license which had actually been issued. However, the same factors would probably be relevant to an

attempt by the city to revoke a license which had been issued as would be relevant to the issuance of the license in the first place. G. L. c. 140, § 183A (8th par.). In both situations, the burden would be on the defendants to show why the club should *not* have the license. In any event, we do not see how Highland Tap would be prejudiced if such a hearing should be held, so long as, pending resolution of the case on the merits, there is compliance with the express terms of the single justice's order preventing revocation or suspension of the license and interference with the club's presentation of the nude dancing shows.

There is substantial community concern about the outcome of this case. It should proceed to trial without further delay. Appeals from orders allowing or denying preliminary injunctions, to the extent that they delay resolution of the merits of the issues in the case, are to be "greatly discouraged." *Biotti v. Selectmen of Manchester*, 25 Mass. App. Ct. 637, 642 n.12 (1988).

Having construed the single justice's order to permit the defendants to hold a public hearing pursuant to G. L. c. 140, § 183A, we affirm the order.

*So ordered.*

APPENDIX.

A. General Laws c. 140, § 183A, as appearing in St. 1981, c. 694, § 1:

"No innholder, common victualler, keeper of a tavern, or person owning, managing, or controlling any club, restaurant or other establishment required to be licensed under section twelve of chapter one hundred and thirty-eight or under section two, twenty-one A or twenty-one E of chapter one hundred and forty, and no person owning, managing, or controlling any concert, dance, exhibition, cabaret or public show of any description to be conducted on any premises required to be licensed under the sections described above, shall, as part of its usual business, offer to view, set up, set on foot, maintain or carry on a concert, dance exhibition, cabaret or public show of any description, unless or until a license therefor has been issued by the licensing authorities.

"The application for such license shall be in writing and shall state the type of concert, dance, exhibition, cabaret or public show sought to be licensed and shall state whether such public show will include: (a) dancing by patrons, (b) dancing by entertainers or performers, (c) recorded or live music, (d) the use of an amplification system, (e) a theatrical exhibition, play, or moving picture show, (f) a floor show of any description, (g) a light show of any description, or (h) any other dynamic audio or visual show, whether live or recorded.

"The application shall also state whether as part of the concert, dance exhibition, cabaret or public show any person will be permitted to appear on the premises in any manner or attire as to expose to public view any portion of the pubic area, anus, or genitals, or any simulation thereof, or whether any female person will be permitted to appear on the premises in any manner or attire as to expose to public view any portion of the breast below the top of the areola, or any simulation thereof.

"Upon request of the licensing authorities, the applicant shall furnish further additional information concerning the type of concert, dance exhibition, cabaret, or public show sought to be licensed, the conditions of the premises, and the actions to be taken in order to prevent danger to the public safety, health or order. Once a license has been granted to an applicant, the licensee shall continue to provide such information to the licensing authorities upon their request with regard to any particular concert, dance, exhibition, cabaret, or public show or with regard to the conduct of the premises in general.

"Within forty-five days following receipt of an application for a license under this section, the licensing authorities may (a) grant a license or, (b) shall provide the opportunity for a hearing on the application by written notice to the applicant given seven days prior to the hearing date.

"Within thirty days next following the final date of such opportunity for a hearing the licensing authorities shall, (a) grant the license or, (b) deliver to the applicant a written notice denying the license and stating in writing the reasons for such denial. No application having been denied as aforesaid and no similar application thereto may be filed within one year of said denial except in the discretion of the licensing authorities.

"The licensing authorities shall grant a license under this section unless they find that the license, taken alone or in combination with other licensed activities on the premises, would adversely affect the public health, safety or order, in that the concert, dance, exhibition, cabaret, or public show cannot be conducted in a manner so as to: (a) protect employees, patrons, and members of the public inside or outside the premises from disruptive conduct, from criminal activity, or from health, safety or fire hazards; (b) prevent an unreasonable increase in the level of noise in the area caused by the licensed activity or caused by patrons entering or leaving the premises; or (c) prevent an unreasonable increase in the level of pedestrian or vehicular traffic in the area of the premises or an unreasonable increase in the number of vehicles to be parked in the area of the premises.

"The licensing authorities may modify, suspend or revoke a license granted pursuant to the provisions of this section after providing an opportunity for a hearing preceded by a written notice to the licensee ten days prior to the hearing date. The licensing authorities may not modify, suspend or revoke such license unless they find that the license, taken alone or in combination with other licensed activities on the premises, has adversely affected the public health, safety or order as stated in the preceding paragraph. In any case in which the licensing authorities modify, suspend or revoke a license, they shall notify the licensee in writing of such action and said written notice shall be accompanied by a statement of reasons.

"In order to preserve and protect the public health, safety, and order as aforesaid, the licensing authorities may place conditions upon the license and promulgate rules and regulations for such licenses. The licensing authorities may modify, suspend or revoke a license pursuant to this section for any violation of their rules and regulations or for any violation of law and may petition the superior court department of the trial court to enjoin any violation of this section.

"The licensing authorities of any city or town may adopt a rule requiring licensees under this section to prohibit minors from attending any concert, dance, exhibition, cabaret or public show of any description in which or at which any person appears in a manner or attire as to expose to public view any portion of the pubic area, anus, or genitals, or any simulation thereof, or in which or at which any female person appears in a manner or attire as to expose to public view any portion of the breast below the·top of the areola, or any simulation thereof.

"A license issued under this section, unless sooner revoked, shall expire on December thirty-first of each year. The fee for any such license or for any renewal thereof shall not exceed one hundred dollars.

"The provisions of this section shall be applicable seven days per week; provided, however, that no license under this section shall be granted to permit such activities, except an athletic game or sport, or motion picture exhibited at a drive-in theater during the period from the last Sunday in April to the last Sunday in October, on Sundays or before one o'clock in the afternoon on Sundays, without the written approval of the commissioner of public safety, made in accordance with the provisions of this section, upon written application to the said commissioner accompanied by a fee of not more than five dollars, or in the case of an annual license by a fee of not more than one hundred dollars."

B. *Rules and Regulations of the Mayor's Office of Consumer Affairs and Licensing (Mayor's Licensing Division) Entertainment License*:

" (2a) It is forbidden to employ or permit any persons in or on the licensed premises while such person is unclothed or in such attire as to expose to view any portion of the areola of the female breast or any portion of the pubic hair, cleft of the buttocks, or genitals, except with specific approval of the Division upon a petition seeking nude entertainment." (See Amendment No. 38 of Section 3-1 of the Boston Zoning Code [1971]).