Highland Tap of Boston, Inc. v. Commissioner of Consumer Affairs & Lic. of Boston.

HIGHLAND TAP OF BOSTON, INC., & another[1] vs.
COMMISSIONER OF CONSUMER AFFAIRS AND LICENSING OF
BOSTON & another.[2]

No. 90-P-1546.

Suffolk. March 5, 1992. - November 16, 1992.

Present: WARNER, C.J., BROWN, & IRELAND, JJ.

*License. Public Entertainment. Moot Question. Practice, Civil*, Collateral
estoppel. *Estoppel. Regulation. Administrative Law*, Regulation,
Agency, Agency's interpretation of regulation, Hearing. *Notice*, Ad-
ministrative hearing. *Civil Rights*, Attorney's fees.

This court addressed certain moot issues in a case involving the issuance of
entertainment licenses, where the issues were fully briefed, would al-
most certainly arise again under similar factual circumstances and
would continue to evade appellate review because the duration of the
licenses was only one year. [566]
No considerations of issue preclusion or estoppel were applicable to pro-
hibit the licensing authority of the city of Boston from applying the
provisions of Boston licensing rule 2a (1983) to a certain tavern. [567-
569]
The licensing authority of the city of Boston, in enforcing provisions of its
licensing rules that incorporate the Boston Zoning Code, could appro-
priately make an initial determination whether a certain licensee has
violated the Boston Zoning Code, where there was no dispute among
the licensee, the licensing authority and the Boston zoning authorities
that in fact the licensee's activities were in violation of provisions of the
zoning code. [569-570]
A 1987 notice of a license revocation hearing did not adequately notify the
licensee of the charges, where it was misleading in that it did not spec-
ify which license regulations had allegedly been violated. [570-572]
The Boston licensing authority properly considered a tavern's 1988 en-
tertainment license renewal application as a petition, under Boston li-
censing rule 2a (1983), for approval to present nude entertainment.
[572]
In an action brought by a tavern seeking review of a municipal licensing
authority's actions, there was no error in the judge's denial of the plain-
tiff's application for attorney's fees and costs pursuant to State and

[1]Frank Alexopoulos, manager of Highland Tap of Boston, Inc.
[2]The city of Boston.

560                                                    33 Mass. App. Ct. 559

Highland Tap of Boston, Inc. v. Commissioner of Consumer Affairs & Lic. of Boston.

Federal Civil Rights Acts, where the plaintiff failed to allege or show any violation of G. L. c. 12, § 11I, and did not demonstrate it was a "prevailing party" under 42 U.S.C. § 1988. [572-573]

CIVIL ACTION commenced in the Superior Court Department on December 29, 1987.

The case was heard by *John L. Murphy, Jr.*, J., and a motion for an award of attorney's fees and costs was also heard by him.

*Kenneth H. Tatarian* for the plaintiffs.

*M. Catherine Huddleson* for the defendants.

WARNER, C.J. This case involves issues which have been in litigation since 1980. We begin by outlining the events that led to this appeal. The plaintiff Highland Tap of Boston, Inc. (Highland Tap), a tavern located on Washington Street in the Roxbury section of Boston, has held an entertainment license since the early 1970's. It began to present nude dancing in September, 1979. In March of 1980, the licensing board of the city of Boston (board) held a hearing at which it asserted that the nude dancing violated G. L. c. 140, § 183A (as appearing in St. 1936, c. 71, § 1), the statute governing entertainment licensing, and that it also violated one of the board's licensing regulations, then called condition 8A. At that time, condition 8A prohibited nudity on licensed premises unless the premises were located in the area known as the "Adult Entertainment Zone," which had been so designated in 1974 by an amendment to the Boston Zoning Code.[3] The board informed Highland Tap that it would defer action on the pending violation if Highland Tap stopped presenting nude dancing. The plaintiff had done so the month before,

---

[3]Licensing condition 8A read as follows before it was revised in 1983: "It is forbidden to employ or permit any person in or on the licensed premises while such person is unclothed or in such attire as to expose to view any portion of the areola of the female breast or any portion of the pubic hair, cleft of the buttocks, or genitals except this Section A does not apply to licensed premises located in the 'Adult Entertainment Zone' as designated by Amendment No. 38 of Section 3-1 of the Boston Zoning Code."

33 Mass. App. Ct. 559 561

Highland Tap of Boston, Inc. *v.* Commissioner of Consumer Affairs & Lic. of Boston.

after being informed by the Boston police that the entertainment was illegal.

*The Gargiulo Litigation.*

In May of 1980, Highland Tap brought an action in the Superior Court, seeking to restrain the board from enforcing the licensing statute or condition 8A on grounds that they were unconstitutional facially and as applied. Highland Tap of Boston, Inc. *vs.* Gargiulo, Civil No. 42026 (Superior Court, Suffolk County, 1980) (hereafter *Gargiulo*). The court granted preliminary injunctive relief in June, 1980, and Highland Tap again began presenting nude entertainment. Since that time, Highland Tap has been permitted to present nude entertainment under court order.[4]

While *Gargiulo* was pending, a judge of the Federal District Court for Massachusetts held that G. L. c. 140, § 183A, was unconstitutionally overbroad and vague, as it gave complete discretion to licensing authorities and contained no governing standards. See *Venuti* v. *Riordan*, 521 F. Supp. 1027, 1030-1031 (D. Mass. 1981).[5] Section 183A was revised that year to incorporate standards limiting the authorities' discretion to grant, modify, suspend, or revoke licenses. St. 1981, c. 694, § 1.[6] Condition 8A was revised in 1983. Now called

---

[4]See *Gargiulo, supra*; *Highland Tap of Boston, Inc.* v. *Boston*, 26 Mass. App. Ct. 239 (1988).

[5]The court cited, at 1030, the following relevant portions of the entertainment licensing statute, § 183A:

"No . . . person owning, managing or controlling a cafe, . . . or other eating or drinking establishment shall . . . offer to view . . . maintain or carry on a concert, dance, exhibition, cabaret or public show of any description at which food or drink or other refreshment is sold for cash . . . unless and until a license therefor . . . has been issued by the licensing authorities, who may upon written application and upon such terms and conditions as they may prescribe, grant such a license for any or all of the purposes hereinbefore described and may, after written notice to the licensee, suspend or, after hearing revoke the same."

The court then noted that "[a] person who operates an entertainment business without a license may be punished by a fine or imprisonment, with the loss of corporate charter following a conviction. G. L. c. 140, § 183C."

[6]The relevant section of the revised § 183A provides:

"The licensing authorities shall grant a license under this section unless they find that the license, taken alone or in combination with other li-

rule 2a, it prohibits nudity on licensed premises unless the licensee has petitioned to present nude entertainment and the licensing authority has given its approval.[7]

In 1985, a Superior Court judge in *Gargiulo*, citing the Federal District Court's decision in *Venuti*, ruled in a partial summary judgment that the former G. L. c. 140, § 183A, and the former licensing condition 8A were unconstitutional prior restraints on freedom of expression. The judge concluded that the revised statute and the revised condition 8A were constitutional on their face. Nonetheless, the judge ruled that the board could not apply the revised condition 8A to Highland Tap to regulate its presentation of nude dancing. The judge apparently concluded that because the prior unconstitutional licensing statute could not properly restrict the plaintiff's presentation of nude entertainment, and because the board had issued licenses to Highland Tap for the years 1982 through 1985, the board could not currently apply the

---

censed activities on the premises, would adversely affect the public health, safety or order, in that the concert, dance, exhibition, cabaret, or public show cannot be conducted in a manner so as to: a) protect employees, patrons, and members of the public inside or outside the premises from disruptive conduct, from criminal activity, or from health, safety or fire hazards; b) prevent an unreasonable increase in the level of noise in the area caused by the licensed activity or caused by patrons entering or leaving the premises; or c) prevent an unreasonable increase in the level of pedestrian or vehicular traffic in the area of the premises or an unreasonable increase in the number of vehicles to be parked in the area of the premises."

The revised § 183A further specifies that the same standards apply to the modification, suspension, or revocation of licenses.

The amended version of the statute, unlike the earlier version, explicitly requires that an application for an entertainment license include a description of the type of entertainment that will be offered and whether any person will appear on the premises nude or partially nude.

[7] The current rule 2a states:

"It is forbidden to employ or permit any persons in or on the licensed premises while such person is unclothed or in such attire as to expose to view any portion of areola of the female breast or any portion of the pubic hair, cleft of the buttocks, or genitals, *except with specific approval of the Division upon a petition seeking nude entertainment.* (See Amendment No. 38 of Section 3 - 1 of the Boston Zoning Code)" (Emphasis supplied.) The current rule 2a is identical to the revised condition 8A, except that "Board" has been substituted for "Division."

amended condition 8A to Highland Tap. *Gargiulo* was dismissed by agreement of all parties on July 22, 1987.

*The 1987 License Revocation.*

After *Gargiulo* was dismissed, the licensing authority, now the mayor's office of consumer affairs and licensing (the division),[8] resumed its attempts to regulate Highland Tap's presentation of nude entertainment. It notified Highland Tap that a license revocation hearing would be held on November 18, 1987. On December 28, 1987, after two days of hearings, the division found Highland Tap to be in violation of five licensing regulations and revoked its 1987 entertainment license. Three of these violations are important to this appeal. First, Highland Tap was found to have violated the revised condition 8A, now called rule 2a, because it had not petitioned the division for approval to present nude entertainment. Second, the plaintiff was found to be in violation of two licensing regulations which require conformance to provisions of the Boston Zoning Code. One, condition 4, states that licensees must conform to the code's provisions. The other, rule 9, provides that a licensee who restricts admission for entertainment to adults as a general practice may operate only in the Boston Adult Entertainment Zone, unless it had been presenting adult entertainment prior to 1974.[9]

---

[8]In April, 1986, the statutory authority to issue entertainment licenses in Boston was transferred from the board to the division. See *G.J.T., Inc.* v. *Boston Licensing Bd.*, 397 Mass. 285 (1986).

[9]The five licensing regulations the plaintiff was found to have violated are as follows:

(1) Rule 2a: (See note 7, *supra*.)

(2) Licensing condition No. 4: "The licensee shall conform to the applicable provision of the Boston Zoning Code and State Building Code, obtaining a Certificate of Use and Occupancy from the Inspectional Services Commissioner if so required by these codes."

(3) Rule 9: "If you are restricting admission for entertainment to adults as a matter of prevailing practice, the premises must be licensed within the Adult Entertainment District. The only exception allowed is if this premise

*The 1988 Rule 2a Hearings and the Plaintiff's Second Action Against the Licensing Authorities.*

On December 28, 1987, the same day the division revoked Highland Tap's 1987 license, it notified Highland Tap that it was treating the plaintiff's license renewal application for 1988 as a "petition" under rule 2a seeking approval of nude entertainment and that a hearing would be scheduled. The next day, Highland Tap again brought an action against the division in the Superior Court. The complaint alleged that the division had violated prior judicial and administrative decisions and abridged rights protected by the First and Fourteenth Amendments to the United States Constitution, arts. 12 and 16 of the Massachusetts Declaration of Rights, and State and Federal civil rights laws. Highland Tap sought to enjoin the division from interfering with its presentation of nude dancing, enforcing the revocation of its 1987 entertainment license, and enforcing the rule 2a requirement that it petition for approval to present nude entertainment. The plaintiff successfully obtained preliminary injunctive relief in each respect. On appeal, this court permitted the rule 2a hearing to go forward but did not permit the division to implement whatever decision it reached. See *Highland Tap of Boston, Inc.* v. *Boston*, 26 Mass. App. Ct. 239 (1988).[9]

The division conducted a rule 2a hearing on August 25, 1988. After the hearing, it denied Highland Tap approval to present nude entertainment during the license year 1988. On November 23, 1988, the plaintiff filed a supplemental complaint in the Superior Court seeking to enjoin the division from enforcing that decision. On December 21, 1988, the division again denied Highland Tap the authority to present

has been restricted to adults continuously since November 26, 1974 or prior thereof."

(4) Rule 2c: "It is forbidden to encourage or permit any person in or on the licensed premise to touch, caress, or fondle the breasts, buttocks, or genitals of any other persons."

(5) Rule 2e: "It is forbidden to employ or permit any person in or on the licensed premises to perform any act or acts, or to simulate an act or acts, of: (1) sexual intercourse, masturbation, sodomy, flagellation or any sexual acts prohibited by law; or (2) touching, caressing, or fondling of the breasts, buttocks, or genitals of another."

33 Mass. App. Ct. 559                                   565

Highland Tap of Boston, Inc. *v.* Commissioner of Consumer Affairs & Lic. of Boston.

nude entertainment and issued it a 1989 entertainment li-
cense without authorization to present a floor show of any
type. On January 20, 1989, Highland Tap filed a second sup-
plemental complaint seeking delivery of a 1989 license per-
mitting a floor show. The parties submitted briefs and docu-
mentary evidence and presented oral arguments to the
Superior Court. No testimonial evidence was offered.

*The Superior Court Decision Now Being Appealed.*

In relevant part, in his findings of fact, rulings of law, and
order for judgment[10] issued on November 8, 1989, the judge
concluded that the division had not given Highland Tap ade-
quate notice of the 1987 license revocation hearings. He also
ruled that the division could not conduct a rule 2a hearing to
determine whether to approve Highland Tap's presentation
of nude entertainment. This ruling rested on a finding that
the division had previously applied the rule 2a requirement
only to new applications for licenses which requested permis-
sion to present nude entertainment or to establishments seek-
ing to expand their existing licenses to include nude en-
tertainment. The division contended that Highland Tap's
1988 and 1989 applications constituted requests for license
expansions to present nude entertainment. The judge decided
that these applications did not seek license expansions be-
cause Highland Tap's license applications had been listing
nude entertainment as part of its proposed floor show since
1982. He further concluded that the division lacks authority
to suspend, revoke, or deny a license based on its interpreta-
tion of the Boston Zoning Code.

The judge declared that issues concerning Highland Tap's
1987 and 1988 licenses were moot, and, noting that the 1989
license would soon expire, specified that any order made
would apply to a 1990 license. On December 22, 1989, he
ordered the division to issue Highland Tap a 1990 entertain-
ment license. He further ordered that pending the outcome
of this appeal, the division was enjoined from interfering with

---

[10]See *Swampscott Educ. Assn.* v. *Swampscott*, 391 Mass. 864, 865-866
(1984).

Highland Tap's presentation of nude entertainment based on the division's interpretation of the Boston Zoning Code.

Highland Tap moved for an award of attorney's fees and costs pursuant to Massachusetts and Federal civil rights acts, G. L. c. 12, §§ 11H and 11I, and 42 U.S.C. § 1988 (1988). The motion was denied, as was the division's motion for a new trial. Highland Tap appealed the denial of attorney's fees and costs. The division appealed the Superior Court's November 8, 1989, and December 22, 1989, orders, and the denial of its motion for a new trial.

*Discussion.*

1. *Mootness.* The passage of time has rendered moot the issuance of entertainment licenses for 1987 through 1990.[11] See *Piona v. Alcoholic Bevs. Control Commn.*, 332 Mass. 53, 57 (1954); *New Palm Gardens, Inc. v. Alcoholic Bevs. Control Commn.*, 15 Mass. App. Ct. 963, 963-964 (1983). We will nevertheless decide important issues in this case. These concern whether 1) the division is precluded from requiring Highland Tap to petition for approval to present nude entertainment, and 2) the division is authorized to determine initially whether a licensee has violated provisions of the Boston Zoning Code which the division has incorporated into its own entertainment licensing regulations. Both sides have briefed these issues. They will almost certainly arise again under similar factual circumstances and will continue to evade appellate review because entertainment licenses have a one-year duration. See *Lockhart v. Attorney Gen.*, 390 Mass. 780, 782-784 (1984), and cases cited; *Reep v. Commissioner of the Dept. of Employment and Training*, 412 Mass. 845, 846 n. 1 (1992). In order to clarify procedural requirements, we will also comment on certain questions relating to the 1987 revocation hearings and the 1988 rule 2a hearing.

Because of mootness we do not decide issues concerning the division's findings, following the 1987 license revocation hearings, that Highland Tap violated licensing rules 2(c) and

---

[11]As a practical matter, the same may be said as to the license for 1991.

33 Mass. App. Ct. 559                                    567

Highland Tap of Boston, Inc. *v.* Commissioner of Consumer Affairs & Lic. of Boston.

(e). Those regulations prohibit patrons from touching entertainers' genital areas and prohibit entertainers from simulating sexual acts. See note 9, *supra*. We do not assume that these issues will necessarily arise again, since Highland Tap has stated that it prohibits these activities on its premises. See *Utility Contractors Assn., Inc.* v. *Department of Pub. Works*, 29 Mass. App. Ct. 726, 729-730 (1991). Nor are they likely to evade appellate review should they recur, since they may be addressed expeditiously through the division's administrative process.[12]

2. *The division's application of rule 2a to Highland Tap.* Highland Tap argues that the division cannot require it to petition for approval to present nude entertainment because the Superior Court had so ruled in *Gargiulo* and the issue may not, therefore, be relitigated. *Gargiulo*, however, resulted in voluntary dismissal without prejudice, see Mass.R.Civ.P. 41(a)(1), 365 Mass. 803 (1974), before the entry of final judgment or the issuance of certification pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974), and before full resolution of all the factual issues. See *Highland Tap of Boston, Inc.* v. *Boston*, 26 Mass. App. Ct. at 241. The rulings in that case consequently are not binding on the division or in this action. See *Tausevich* v. *Board of Appeals of Stoughton*, 402 Mass. 146, 149 (1988); *National R.R. Passenger Corp.* v. *International Assn. of Machinists & Aerospace Workers*, 915 F.2d 43, 48 (lst Cir. 1990).

Highland Tap further contends that the doctrine of estoppel prohibits the division from requiring it to comply with the rule 2a requirements because the division had previously issued Highland Tap entertainment licenses knowing that it

---

[12]We do not decide State and Federal constitutional issues for the reasons, if no other, that (1) the judge did not decide them, (2) the issues have not been briefed by Highland Tap and the division has done so only cursorily, (3) we do not know what factual record may be developed in future hearings, and (4) depending upon the results of those hearings, constitutional questions may not be presented. See *Samuels Pharmacy, Inc.* v. *Board of Registration in Pharmacy*, 390 Mass. 583, 590 (1983); *Lockhart* v. *Attorney Gen.*, 390 Mass. at 784; *Reliance Ins. Co.* v. *Commissioner of Ins.*, 31 Mass. App. Ct. 581, 589-590 (1991).

presented nude entertainment, but without requiring adherence to its regulations. Highland Tap has, however, been on notice of the board's, and then the division's, attempts to enforce its regulations restricting the presentation of adult entertainment since at least 1980, when Highland Tap instituted the *Gargiulo* litigation. Considering the licensing authorities' continued attempts to gain compliance, the plaintiff can hardly claim unfair surprise.[13] Furthermore, the doctrine of estoppel is generally not applied to the government's exercise of its public duties and is not applied "where to do so would frustrate a policy intended to protect the public interest." *Risk Mgmt. Foundation of the Harvard Med. Insts., Inc.* v. *Commissioner of Ins.* 407 Mass. 498, 509-510 (1990), quoting from *LaBarge* v. *Chief Admin. Justice of the Trial Ct.*, 402 Mass. 462, 468 (1988). Application of the doctrine of estoppel to this case would frustrate the division's statu-

---

[13]We disagree with the Superior Court judge's conclusion that the division could not consider Highland Tap's 1988 and 1989 applications as requests for a license expansion to present nude entertainment because Highland Tap had filed previous applications specifying that it would present nude dancing. The licensing authorities had considered Highland Tap's presentation of nude dancing to be an expansion of its licensed activities from the time it began such presentations, and had been attempting to regulate the presentations since that time.

The licensing authorities complied with court orders requiring them to issue Highland Tap entertainment licenses but nevertheless continually indicated their position that Highland Tap was not entitled to present nude dancing. While the board issued Highland Tap licenses for 1982, 1983, 1984, and 1985 pursuant to court order, it refused to deliver them. The division included in its renewal of Highland Tap's 1987 license a letter referring to the pending *Gargiulo* litigation and stating that the renewal would not prejudice the division's legal rights. An apparent exception occurred in 1986, when the division notified Highland Tap that its current license would be honored and considered valid. This notification, however, did not refer specifically to the circumstances of Highland Tap's license. It was a standardized letter, apparently sent to all licensees, to inform them that the licensing authority had been transferred from the board to the division.

The judge also said that rule 2a was "very flexible and the hearings, when held, were at the complete discretion of the division." That statement was based entirely on the deposition testimony of the secretary to the board. The board's licensing responsibilities were transferred to the division in 1986 and the events which are involved in this action occurred after that time. Thus, we attach no critical significance to the judge's statement.

33 Mass. App. Ct. 559                    569

Highland Tap of Boston, Inc. *v.* Commissioner of Consumer Affairs & Lic. of Boston.

tory obligation to promulgate and enforce regulations to "protect the public health, safety, and order." G. L. c. 140, § 183A (note 6, *supra)*.

The division is not precluded from applying rule 2a to Highland Tap.

3. *The division's authority to interpret the Boston Zoning Code under the circumstances.* The division's authority initially to interpret provisions of the Boston Zoning Code affects its ability to enforce its licensing regulations which relate to zoning. Condition 4 and rule 9 (see note 9, *supra.*), which the division found Highland Tap to have violated in 1987, require conformance with zoning code provisions. The division could not determine whether these regulations had been violated without first determining whether Highland Tap's presentation of nude entertainment outside the Adult Entertainment Zone violated the Boston Zoning Code. Additionally, the division's decision whether to approve Highland Tap's presentation of nude entertainment under rule 2a would logically include consideration of whether it was violating provisions of the Boston Zoning Code limiting such presentations to a specified area of the city.

Highland Tap concedes that it has been presenting nude adult entertainment since late 1979 and that it is located outside the Adult Entertainment Zone.[14] Both the division and the Boston zoning authorities have expressed agreement that Highland Tap's activity at its present location violates provisions of the code. Under these undisputed facts, the division may initially determine that the plaintiff has violated the Boston Zoning Code.

The division was not attempting to grant or deny variances, issue enforcement orders, or otherwise improperly assume the powers and responsibilities of a zoning board. Contrast *Colabufalo* v. *Board of Appeal of Newton*, 336 Mass. 213, 214-216 (1957). The division's action in this respect was

---

[14]The division contends that Highland Tap's presentation of nude entertainment is not a prior nonconforming use. The presentations began several years after the promulgation of the 1974 zoning code amendment creating an Adult Entertainment Zone.

analogous to those of the Alcoholic Beverages Control Commission (ABCC) considered in *Aristocratic Restaurant of Massachusetts, Inc.* v. *Alcoholic Bevs. Control Commn. (No. 1)*, 374 Mass. 547, 551 (1978). There, the Supreme Judicial Court held that the ABCC may interpret a regulation of a local licensing board in order to determine whether the licensee had violated the ABCC's own regulation prohibiting illegality on licensed premises. Although the division is a local, not a State agency, it, like the ABCC, is authorized to revoke a license for violation of law or of one of its regulations.[15] Cf. *Vaspourakan, Ltd.* v. *Alcoholic Bevs. Control Commn.*, 401 Mass. 347, 352 (1987); *Oznemoc, Inc.* v. *Alcoholic Bevs. Control Commn.*, 412 Mass. 100, 104-106 (1992).

4. *Procedural questions with respect to the 1987 license revocation hearings and the 1988 rule 2a hearing.* (a) *The 1987 license revocation hearings.* The division did not adequately notify Highland Tap of the charges it was bringing at its 1987 license revocation hearings. The notification stated that police reports contained allegations concerning the adequacy of Highland Tap's management. It included copies of police reports describing nude dancing, simulated sexual activity and patrons' placing money under dancers' g-strings. Other allegations concerned a drug arrest, failure to post various licenses and a board of health certificate, and failure to provide a receipt for a cover charge. The notice did not specify which license regulations had allegedly been violated. After the hearings, the division found that Highland Tap had violated the division's condition 4 and rule 9 (see note 9, *supra*) by illegally presenting adult entertainment outside the Adult Entertainment Zone. It further found that

---

[15]General Laws c. 138, § 64 (1986 ed.), provides that the ABCC "may modify, suspend, revoke or cancel his license upon satisfactory proof that he has violated or permitted a violation of any condition thereof, or any law of the Commonwealth."

General Laws c. 140, § 183a, provides that "the licensing authorities may modify, suspend, or revoke a license . . . for any violation of their rules and regulations or for any violation of law. . . ."

Highland Tap had violated rule 2a by presenting nude entertainment without having petitioned for approval.

General Laws c. 140, § 183A, provides that "[t]he licensing authorities may . . . revoke a[n entertainment] license . . . after providing an opportunity for a hearing preceded by a written notice to the licensee ten days prior to the hearing date." The Supreme Judicial Court has construed the hearing provisions of the pre-1981 version of G. L. c. 140, § 183A, to require "adequate notice setting forth the charge which forms the basis for the revocation." *Konstantopoulos* v. *Whately*, 384 Mass. 123, 135 (1981). "Due process requires notice of the grounds on which the board might act rather than the evidentiary support for those grounds." *La-Pointe* v. *License Bd. of Worcester*, 389 Mass 454, 458 (1983). The notice was required to give Highland Tap "reasonable opportunity to prepare and present evidence and argument." *Aristocratic Restaurant of Massachusetts, Inc.* v. *Alcoholic Bevs. Control Commn. (No. 1)*, 374 Mass. at 551. See *Foster from Gloucester, Inc.* v. *City Council of Gloucester*, 10 Mass. App. Ct. 284, 289-290 (1980).

Here, the notice was misleading. From the notice, Highland Tap could properly assume that the hearing would be concerned with alleged violations related to mismanagement of the premises. At the hearing, Highland Tap's attorney expressed his understanding that the proceedings were to be limited to such questions. Whether Highland Tap's presentation of nude entertainment violated regulations requiring conformance with the Boston Zoning Code, and whether Highland Tap had violated rule 2a, were both unrelated to the issue of whether the premises were properly managed. The revocation hearings were not, in fact, focused on the zoning issue or on Highland Tap's responsibilities under rule 2a.

The notice, "taken in conjunction with the hearing, [was not] sufficient to accomplish substantial justice" [because] it "misled a licensee as to the possible grounds for revocation which he should be prepared to meet at the public hearing." *Foster from Gloucester, Inc.* v. *City Council of Gloucester*,

572                                          33 Mass. App. Ct. 559

Highland Tap of Boston, Inc. *v.* Commissioner of Consumer Affairs & Lic. of Boston.

*supra* at 289-290, citing *Higgins* v. *License Commrs. of Quincy*, 308 Mass. 142, 145-146 (1941), and *Becker Transp. Co.* v. *Department of Pub. Util.*, 314 Mass. 522, 526-527 (1943).

(b) *The 1988 rule 2a hearing.* Highland Tap maintains that the division improperly considered its 1988 license renewal application (which specified that nude entertainment would be presented) as a "petition" under rule 2a for approval to present nude entertainment. There was nothing improper in that action. Rule 2a specifies that a licensee's "petition" initiates the approval process. See note 7, *supra.* It does not require a petition to be filed separately from the license application. Imposing a technical requirement that a rule 2a hearing can be initiated only if the licensee files a separate petition for approval would, without any sound purpose, condition the division's ability to enforce its rule on the licensee's decision whether or not to file a separate petition.[16]

5. *Highland Tap's application for attorney's fees and costs pursuant to Massachusetts and Federal Civil Rights*

---

[16]Highland Tap claims that the rule 2a hearing was invalid because the division failed to notify Highland Tap of the hearing within 45 days of receiving its license renewal application as required by G. L. c. 140, § 183A. This issue was not raised before the division, however, and has thus been waived. *Albert* v. *Municipal Ct. of the City of Boston*, 388 Mass. 491, 493 (1983). *Shoolman* v. *Health Facilities Appeals Bd.*, 404 Mass. 33, 42-43 (1989). See also *Highland Tap of Boston, Inc.* v. *Boston*, 26 Mass. App. Ct. at 242 n.2. Nor has Highland Tap alleged, let alone demonstrated, that it suffered any adverse consequences from the *timing* of the notice. See *Massachusetts Auto Body Assn., Inc.* v. *Commissioner of Ins.*, 409 Mass. 770, 780 (1991).

Highland Tap briefly refers, without citation of authority, to alleged deficiencies in the conduct of the rule 2a hearing. The reference does not rise to the level of appellate argument. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975); *Graham* v. *Quincy Food Serv. Employees Assn. & Hosp., Library & Pub. Employees Union*, 407 Mass. 601, 605 n.2 (1990); *Foley* v. *Evans*, 30 Mass. App. Ct. 509, 512-513 n.5 (1991). As to the type and conduct of the hearing, see and compare *Mosey Cafe, Inc.* v. *Licensing Bd. for Boston*, 338 Mass. 199, 205 (1958); *Konstantopoulos* v. *Whately*, 384 Mass. at 131-135; *Foster from Gloucester, Inc.* v. *City Council of Gloucester, Inc.*, 10 Mass. App. Ct. at 291-292; *Yerardi's Moody St. Restaurant & Lounge, Inc.* v. *Selectmen of Randolph*, 19 Mass. App. Ct. 296, 302-304 (1985). See also *LaPointe* v. *License Bd. of Worcester*, 389 Mass. at 459.

*Acts.* There was no error in the denial of Highland Tap's application. It is enough to say that our preceding discussion demonstrates that the denial was proper for the reasons, if no other, that (a) Highland Tap failed to allege or show that there was any violation of G. L. c. 12, § 11I,[17] and (b) prescinding from consideration of the nature of the claims, Highland Tap was not the "prevailing party" under 42 U.S.C. § 1988, that is, it cannot "point to a resolution of the dispute which changes the legal relationship between itself and the defendant[s]." *Texas Teachers Assn.* v. *Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989). This is the "minimum" which is necessary to be considered a prevailing party under § 1988. *Id.* See also *Smith* v. *University of N. Carolina*, 632 F.2d 316, 346-347 (4th Cir. 1980); *Libby* v. *Illinois High Sch. Assn.*, 921 F.2d 96, 97, 98-99 (7th Cir. 1990).

The appeal of the division is dismissed, not on the merits but because it is moot. The denial of attorney's fees and costs to Highland Tap is affirmed.

*So ordered.*

---

[17]See and compare *Pheasant Ridge Assocs. Ltd. Partnership* v. *Burlington*, 399 Mass. 771, 781 (1987); *Bally* v. *Northeastern University*, 403 Mass. 713, 720 (1989); *Layne* v. *Superintendent, Massachusetts Correctional Inst., Cedar Junction*, 406 Mass. 156, 158 (1989); *Willitts* v. *Roman Catholic Archbishop of Boston*, 411 Mass. 202, 210 (1991). See also the discussion in *Utility Contractors Assn.* v. *Department of Pub. Works*, 29 Mass. App. Ct. 726, 730-732 (1991).