Kenton-Walker, Janet, J.
On March 21, 2011, the plaintiff, Premier Club Enterprises, Inc., d/b/aPlatinum Premier Club (“Premier”), filed a verified complaint following the Ciiy of Worcester licensing Commission’s (“Commission”) revocation of business licenses it had earlier issued to Premier.[2] On that same date, Premier filed an Emergency Motion for Preliminary Injunctive Relief, requesting that this court enter an order staying the revocation of these licenses and requiring the Commission to return these licenses to Premier. On March 22, 2011, the Commission filed its Opposition to this motion. On the same date, the court held a hearing on Premier’s motion. After hearing and review of the parties’ submissions, as well as a review of the applicable statutes and case law, Premier’s motion is ALLOWED.
BACKGROUND
The following facts are derived from the parties’ submissions. On some prior date, the Commission granted an “Entertainment [License]” to Premier for its premises at 241 Southbridge Street. The types of entertainment covered by the license were “piano, piped in music, DJ, TV, video, dancing by patrons, dancing by entertainers, nude dancing, floor shows, and use of amplifiers.” The entertainment license further provided that it was “issued provided that all applicable requirements of the state and town and any of its departments, boards, and commissions have been fulfilled. This license is subject to the conditions stated upon it. Failure to comply with these conditions shall invalidate and render it null and void.” As for restrictions, the license provided that it was “issued and held subject to the rules and regulations of the . . . Commission, as they may be amended from time *178 to time, to any applicable statute or regulation of the Commonwealth of Massachusetts and of any department or agency thereof, as they may be amended from time to time.”
Also on some prior earlier date, the Commission granted a “Common Victualler All Alcoholic License” to Premier for its premises at 241 Southbridge Street. The license provided that it was “granted and accepted upon the express condition that the licensee shall, in all respects, conform to all the provisions of the Liquor Control Act, Chapter 138 of the General Laws, as amended, and any rules or regulations made thereunder by the licensing authorities. This license expires December 31, 2011, unless earlier suspended, can-celled or revoked.”
On March 10, 2011, the Commission drafted a letter entitled “Violation Hearing—All Alcoholic Common Victualler License and Entertainment License.” In this letter, the Commission notified Premier that it was holding a hearing on March 17, 2011 “relative to violations that occurred at the Platinum Premier Club, 241 Southbridge Street, Worcester, Massachusetts on May 25,2010, June 10, 2010 and February 24, 2011.” The letter further informed Premier that the Commission “may modify, suspended, revoke or cancel [its] all alcohol common victualler license or entertainment license, if it finds evidence that the licensee has violated or permitted a violation of any condition of the license or any law of the Commonwealth.” The letter finally informed Premier that it had “the right to have legal counsel present at the hearing.”
On the morning of March 17, 2011, the Commission held this hearing. In its opposition to this motion, the Commission contends that it received certain evidence and made certain findings before deciding to revoke Premier’s entertainment license. Specifically, the Commission heard testimony from police officers, an investigator for the Alcoholic Beverages Control Commission (“ABCC”), Premier’s president, and an employee of Premier. The Commission also reviewed police reports, an ABCC report, receipts for entertainment, and a videotape taken by an employee of Premier depicting another employee allegedly assaulting, robbing, and kidnapping a club patron. Based on this evidence, the Commission found that Premier had violated the hours and operations set forth in its licenses by operating after 2 a.m.; had charged a single patron $22,825 in credit card receipts for entertainment made between the hours of 2 a.m. and 4:30 a.m.; had possessed adulterated alcohol; and had hindered a police investigation as to this incident. The Commission further found that Premier’s employee had committed the acts documented in the videotape. In sum, the Commission found eleven violations of law or its rules and regulations, and, based on the totality and seriousness of the violations, voted unanimously to revoke Premier’s licenses.
In its motion, Premier states that, in the evening of March 17, 2011, Worcester police, acting on behalf of the Commission, took the licenses from Premier’s premises and closed its business operations. The parties do not dispute that the Commission never provided Premier with either written notice of its revocation of Premier’s entertainment license or a statement of reasons for the revocation. The parties also do not dispute that a timely appeal by Premier to the ABCC as to the revocation of its all-alcoholic license prevents the Commission from taking any action on its revocation of that license.
DISCUSSION
Premier now moves the court to enter a preliminary injunction with respect to the Commission’s revocation of these licenses. Such an injunction is granted or denied “after an abbreviated presentation of the facts and the law.” Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616 (1980). On the basis of this record, Premier must show “(1) a likelihood of success on the merits; (2) that irreparable harm will result from denial of the injunction; and (3) that, in light of the plaintiffs likelihood of success on the merits, the risk of irreparable harm to the plaintiff outweighs the potential harm to the defendant in granting the injunction.” Tri-Nel Mgt., Inc. v. Board of Health of Barnstable, 433 Mass. 217, 219 (2001), citing Packaging Indus. Group, Inc., 380 Mass. at 617. When a party seeks to enjoin governmental action, the court is also “required to determine that the requested order promotes the public interest, or, alternatively, that the equitable relief will not adversely affect the public.” Commonwealth v. Mass. CRINC, 392 Mass. 79, 89 (1984). The court considers each of these factors in turn.
I. Substantial Likelihood of Success on the Merits
Premier must first show by a preponderance of the evidence that it has a substantial likelihood of succeeding on the merits of its claim that the Commission unlawfully revoked its licenses. The court first addresses the entertainment license’s revocation before turning to the revocation of the common victualler all alcoholic license.
Entertainment License
UnderG.L.c. 140, §183A, a local licensing authority may revoke an entity’s entertainment license. Judicial review of such a decision is only available in the nature of certiorari, pursuant to G.L.c. 249, §4. Black Rose, Inc. v. City of Boston, 433 Mass. 501, 503 (2001). The proper standard of review in such cases is the substantial evidence test. Konstantopoulos v. Whately, 384 Mass. 123, 137 (1981). This test requires that the local licensing authority’s findings rest upon “such evidence as a reasonable mind might accept as adequate to support a conclusion.” Saxon Coffee Shop, Inc. v. Boston Licensing Bd., 380 Mass. 919, 930 (1980), citing G.L.c. 30A, §1(6). “Review under the *179 standard entails scrutiny of the whole record to determine whether substantial evidence exists.” Boston Edison Co. v. Boston Redevelopment Auth., 374 Mass. 37, 54 (1977).
Premier first argues that the court does not need to address the Commission’s decision since the Commission failed to comply with the notice requirement in Section 183A. Specifically, the statute provides that a local licensing authority “may modify, suspend or revoke a license granted pursuant to the provisions of this section after providing an opportunity for a hearing preceded by a written notice to the licensee ten days prior to the hearing date.” The parties do not dispute that the Commission provided Premier with written notice of the hearing on March 10, 2011—only seven days prior to the hearing date. Premier did not raise this issue before the Commission at the hearing, and therefore may have waived this argument. See Highland Tap of Boston, Inc. v. Commissioner of Consumer Affairs & Licensing of Boston, 33 Mass.App.Ct. 559, 572 n.16 (1992). Nor does Premier contend that it suffered any adverse consequences from the timing of the notice. Id., citing Massachusetts Auto Body Assn., Inc. v. Commissioner of Ins., 409 Mass. 770, 780 (1991) (association failed to demonstrate that procedural errors harmed its substantial rights where it participated in a hearing with oral and written comments). Based on Premier’s representations at the hearing before this court, it had a full opportunity to contest the accusations, presented evidence and participated fully in the hearing before the Commission. At this stage of the proceedings, the court finds, therefore, that Premier waived any notice requirement and did not suffer any prejudice from insufficient notice.
Premier next argues that the Commission failed to comply with Section 183A by falling to provide it with written notice of the license’s revocation. According to Section 183A, licensing authorities may only modify, suspend or revoke an entertainment license if “they find that the license, taken alone or in combination with other licensed activities on the premises, has adversely affected the public health, safety or order,” or where there is “any violation of their rules and regulations or . . . any violation of law.” In cases in which the authorities do revoke a license, “they shall notify the licensee in writing of such action and said written notice shall be accompanied by a statement of reasons.” The parties do not dispute that the Commission voted to revoke Premier’s entertainment license, but never provided Premier with written notice of this action.
In its opposition, the Commission contends that, based on the evidence presented at the hearing, Premier violated eleven separate violations of law and rules and regulations. Based on the totality and seriousness of these violations, the Commission voted unanimously to revoke Premier’s entertainment license. Despite these contended findings, the Commission does not dispute that it failed to provide Premier with written notice of its revocation accompanied with a statement of reasons, thereby violating Section 183A. Because the Commission failed to comply with the statute, Premier has demonstrated, at this stage of the proceedings, a substantial likelihood of success on the merits that the revocation of the entertainment license was invalid.[3] Equally important, while the Commission has stated the reasons for revocation in its opposition, it has not given the court any supporting documentation, such as an affidavit, minutes, or portions of a transcript, to help it determine the sufficiency of the evidence presented at the hearing.
Common Victualler All Alcoholic License
A local licensing authority may revoke a common victualler’s all-alcoholic license pursuant to G.L.c. 138, §64. Where such a license is revoked by a local licensing authority, “no action shall be taken on account thereof by such authorities with respect to such .. . common victualler’s license prior to the expiration of the period provided for an appeal under section sixty-seven in case no such appeal is taken, or prior to the disposition of any such appeal so taken.” G.L.c. 138, §12.[4] See also United Food Corp. v. Alcoholic Beverages Control Comm'n, 375 Mass. 238, 239 n.2 (1978). In its opposition, the Commission conceded that “the plaintiff was entitled to an automatic stay of its [all alcoholic] license pending an appeal to the [ABCC]. To date, the Commission, however, has not received notice of such an appeal to the [ABCC] and, thus, the Commission is unsure if a stay is in effect for the . . . license.” At the motion hearing, the Commission acknowledged that Premier had timely appealed the revocation of its all-alcoholic license to the ABCC.
The parties dispute, however, whether the Commission originally issued Premier a single “common vict-ualler all alcoholic license,” in which G.L.c. 138 would apply, or an “all alcoholic license” and a separate and distinct “common victualler license,” in which G.L.c. 140 would apply to the latter. Under G.L.c. 140, §9, “[i]f a licensee at any time conducts his licensed business in an improper manner, the licensing authorities, after notice to the licensee and reasonable opportunity for a hearing, may upon satisfactory proof thereof suspend or revoke his license.” Since this statute “does not provide for either further administrative review or judicial review” of an authority’s decision, judicial review would only be available in the nature of certiorari, pursuant to G.L.c. 249, §4. Saxon Coffee Shop, Inc., 380 Mass. at 922-23.
At this stage of the proceedings, the court considers the Commission to have issued a single license governed by G.L.c. 138. While the Commission contends that the licenses should be considered separate and distinct since it took three votes at its hearing revoking Premier’s common victualler license, all alcohol li *180 cense, and entertainment license, the Commission treated both licenses as one when it originally issued the single license, as demonstrated by the license’s title, “Common Victualler All Alcoholic License,” and its provision that it was “granted and accepted upon the express condition that the licensee shall, in all respects, conform to all the provisions of the Liquor Control Act, Chapter 138 of the General Laws, as amended, and any rules or regulations made thereunder by the licensing authorities.” See United Food Corp., 375 Mass. at 240 n.3 (“[The authority] had issued the all-alcoholic and victualler’s licenses as a single document, and revocation of the all-alcoholic license . . . carried with it revocation of the associated victuallers’ license”). See also Box Car Willy’s, Inc. v. Barnstable, No. 2007-J-0452, slip op. at 4 (App.Ct. August 8, 2000) (Duffly, J.) (“Where, as here, the [a]uthority has treated both licenses as one, and has in effect also suspended the victualler’s license, the automatic stay provisions of Section 12 are applicable to both licenses”). Premier has therefore established that the Commission violated G.L.c. 138, §12 by unlawfully revoking its license prior to the expiration of five days after its decision or while an appeal is pending before the ABCC.
II.Irreparable Harm
Premier must also establish that failure to grant the injunction to stay the revocation of its licenses would subject it to a substantial risk of irreparable harm. Denial of an injunction would prohibit Premier from operating its business. Once licenses relating to a business “are issued . . . their continued possession may become essential in the pursuit of a livelihood.” Konstantopoulos, 384 Mass. 123, 137 (1981). See also Commonwealth v. Yameen, 401 Mass. 331, 334 (1987) (“A licensee whose license has been revoked . . . immediately suffers the irreparable penalty of loss of [license] for which there is no practical compensation. This happens even if said licensee wins an appeal and a decision holding that the license was wrongfully revoked”). The revocation of its licenses by the Commission prevents Premier from operation. Premier has therefore established irreparable harm.
III.Balancing of the Harms
Premier must also establish that the risk of irreparable harm to it outweighs the potential harm to the Commission in granting the injunction. As discussed, Premier established that it risks irreparable harm if the injunction is not granted and there is no contention that the Commission itself would be harmed if the injunction were not granted. Premier has therefore also established this factor.
IV.Promotion of Public Interest
Premier, however, seeks to enjoin governmental action in moving for a preliminary injunction to stay the revocation of its licenses by the Commission. The court must therefore determine that the requested preliminary injunction promotes the public interest, or, alternatively, that the equitable relief will not adversely affect the public. The Commission contends in its opposition that “[t]he seriousness and totality of the violations demonstrates the [plaintiffs inability to control and supervise its business operations in a manner that protects the public from unreasonable safety risks,” and that granting the injunction “pending a complete judicial review would disserve the public interest and pose a threat to public safety.”
As stated above, the court, however, has no evidence of the Commission’s findings with respect to these violations. As noted, the Commission failed to provide Premier with written notice of its revocation of Premier’s entertainment license, and has not provided the court with even an affidavit with respect to its revocation of either license. Although the court recognizes that there may be cognizable public interest concerns in granting this injunction, the only facts before the court indicate that the Commission utterly failed to comply with the controlling statues in revoking Premier’s licenses. When the Commission complies with the requisite statutory requirements, it may reprise its public interest contentions before the court with respect to the entertainment license, and may certainly raise such issues before the ABCC with respect to the common victualler all alcoholic license.
ORDER
For the foregoing reasons, it is hereby ORDERED that the plaintiff Premier Club Enterprises, Inc.’s Emergency Motion for Preliminary Injunctive Relief be and is ALLOWED.

The parties dispute whether the Commission had earlier issued Premier two or three licenses. While they agree that the Commission had issued Premier an entertainment license, they disagree as to whether the Commission had issued Premier a single “common victualler all alcoholic license,” or an “all alcoholic license” and a separate and distinct “common victualler license.” The court addresses this dispute in its discussion.

Assuming the Commission later provides Premier with the required written notice, accompanied by a statement of reasons, the Commission may seek further action from this court, with the court to then determine whether Premier can demonstrate at that time that it has a likelihood of success by showing that the reasons for the entertainment license’s revocation are not supported by substantial evidence.

Relatedly, G.L.c. 138, §67 provides: “[A]ny person who is aggrieved by the action of such authorities in modifying, suspending, cancelling, revoking or declaring forfeited the same, may appeal therefrom to the [ABCC] within five days following notice of such action or following the expiration of said period, upon petition in writing, setting forth all the material facts in the case.”