Hinkle, J.
Plaintiff JayKay-Boston, Inc., seeks to enjoin defendants City of Boston, Thomas M. Menino as Mayor of the City, and Nancy Lo, individually and as Director of the Mayor’s Office of Consumer Affairs and Licensing (the Division), from enforcing the denial of plaintiff s application for an entertainment license under G.L.c. 140, §183A. Plaintiff challenges the process by which the Division decided to deny its application and the grounds upon which the decision rests. Defendants contend that the Division acted within its authority when denying the application based on plaintiffs alleged misrepresentations and failure to make required disclosures. After hearing and a thorough review of the record, plaintiffs motion for a preliminary injunction is ALLOWED for the reasons set forth below.
BACKGROUND
On October 26, 1998, plaintiff filed an application for an entertainment license with the Mayor’s Office of Consumer Affairs and Licensing. Plaintiff sought a license to present various forms of entertainment, including radio, television, music and a floor show which would include nudily, at the building occupying 640-644 Washington Street, Boston. The proposed location is within Boston’s Adult Entertainment District, where nude entertainment is authorized by the Boston Zoning Code.
The Division held a public hearing on plaintiffs application on November 23, 1998, at 125 Harrison Avenue in Boston. Plaintiffs counsel, proposed manager and assistant manager spoke and answered questions at the hearing. Members of the public, predominantly residents and representatives of the Chinatown area, voiced concerns about the effect of adult entertainment on the surrounding neighborhood. In addition to the comments at the November 23rd hearing, the Division received written statements and documents in opposition to the establishment of a new adult-oriented business, both before and after the hearing. Plaintiff was provided with copies of all submissions related to the application and given an opportunity to respond to these submissions. Director Lo issued a decision dated December 23, 1998, denying plaintiffs application.
DISCUSSION
To obtain a preliminary injunction when the dispute involves a public entity, the moving party must demonstrate that (1) it has a reasonable likelihood of success on the merits of its claim at trial; (2) it will suffer irreparable harm, not capable of remediation by a final judgment in law or equity, if the injunction is not granted; (3) on balance, any harm to the party to be enjoined is outweighed by that which the moving party would suffer without the requested relief; and (4) the interests of the public would be promoted or at least not adversely affected by the requested order. Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980); Commonwealth v. Massachusetts CRINC, 392 Mass. 79, 89 (1984); T&D Video, Inc. v. Revere, 423 Mass. 577, 580 (1996).
I first evaluate whether plaintiff is reasonably likely to succeed on the merits of its claim.[2] The standard of judicial review in cases brought under c. 249, §4, varies according to the nature of the action for which review is sought. Forsyth Sch. for Dental Hygienists v. Board of Registration in Dentistry, 404 Mass. 211, 217 (1989). Although no appellate court appears to have determined the applicable standard of review of denial of an entertainment license under G.L.c. 140, §183A, analogous case law suggests that the Division’s decision should be reviewed under the substantial evidence test. See Saxon Coffee Shop, Inc. v. Boston Licensing Bd., 380 Mass. 919, 924-25 (1980) (applying substantial evidence test to decision revoking common victualer’s license under c. 140, §9); Kostantopoulos v. Whately, 384 Mass. 123, 137 (1981) (applying substantial evidence test to decision revoking entertainment license under c. 140, §183A). The reviewing court must also evaluate whether the decision is “legally tenable," Le., ensure that it contains no substantial *552 errors of law. See Bielawski v. Personnel Adm’r of Div. of Personnel Admin., 422 Mass. 459, 464 (1996); Gloucester v. Civil Serv. Comm’n, 408 Mass. 292, 297 (1990).
Plaintiff argues that the Division exceeded its statutory authority to deny applications for entertainment licenses by basing its decision on alleged misrepresentations by plaintiff and the criminal history of a non-party who, according to the decision, “plays a management and ownership role in the applicant.” Division’s Decision at 2, 5.[3]
G.L.c. 140, §183A, provides that:
The licensing authorities shall grant a license under this section unless they find that the license, taken alone or in combination with other licensed activities on the premises, would adversely affect the public health, safely or order, in that the concert, dance, exhibition, cabaret, or public show cannot be conducted in a manner so as to: (a) protect employees, patrons, and members of the public inside or outside the premises from disruptive conduct, from criminal activity, or from health, safely or fire hazards . . .[4]
Under the clear language of the statute, denial of a license must be based on a finding that the entertainment cannot be conducted in compliance with the stated public safety concerns. This standard, added to §183A to cure “constitutional shortcomings found in the preexisting statutoiy scheme,” is “narrow, objective, and definite.” See Highland Tap of Boston, Inc. v. City of Boston, 26 Mass.App.Ct. 239, 242 n.3 (1988) (‘To be constitutionally valid, a licensing scheme which functions as a prior restraint must operate within ‘narrow, objective, and definite standards’ ”) (quoting Shuttlesworth v. City of Birmingham, 394 U.S. 147, 151 (1969)). Under the statute, the General Court requires that the licensing authority focus on the activity to be licensed, not on the moral fitness of the individuals who may be conducting it. Had the legislature wanted to implicate the moral fitness of the applicant in licensing determinations, it would have said so.
In its decision, the Division states that the denial is not the result of “any one piece of information . . . but rather... [is the result of] the overall picture provided by all available information, that leads this Division to have no confidence in this applicant’s willingness to adhere to the public safety standards ...” Division’s Decision at 8. The decision emphasizes eight factors that contributed to “the overall picture”: (1) plaintiffs proposed manager, Anthony Russo, “has a history of affiliation with individuals and businesses associated with organized criminal activities”; (2) plaintiff did not disclose that a separate corporate entity, Joe P. Enterprises, Inc., was addressed at its premises; (3) Joseph N. Palladino, sole officer and director of Joe P. Enterprises, Inc., has a management and ownership role in plaintiff; (4) Palladino has a criminal record for tax evasion; (5) Palladino has a criminal record for sending obscene materials through the mail; (6) Palladino “has a history of affiliation with individuals and businesses associated with organized criminal activities”; (7) plaintiff failed to respond affirmatively to a question on its application regarding illegal activity; and (8) plaintiff refused to disclose its shareholders. Division’s Decision at 8.
Notably missing from the list of factors that the Division considered determinative are the considerations enunciated in §183A. The Division also failed to connect any of the eight “piece[s] of information” to the statutoiy prerequisite for a denial, which is a finding that the proposed entertainment “cannot be conducted so as to . . . protect employees, patrons, and [the public] from disruptive conduct, from criminal activity, or from health, safety or fire hazards.” The decision contains no reference to considerations raised at the hearing relating to the anticipated increases in noise, traffic and criminal activities such as drugs and prostitution. This failure to substantiate the claim that plaintiffs license will “adversely affect the public health, safety or order” in a manner specified under the statute constitutes a substantial error of law.
Even if the listed factors were properly considered under §183A, they would be unlikely to sustain the Division’s decision. To satisfy the substantial evidence test, an agency’s conclusion need only be based on “reasonable evidence,” or “such evidence as a reasonable mind might accept as adequate to support a conclusion” after considering opposing evidence in the record. G.L.c. 30A, §1(6); New Boston Garden Corp. v. Board of Assessors, 383 Mass. 456, 466 (1981); Hotchkiss v. State Racing Comm'n, 45 Mass.App.Ct. 684, 696 (1998). Notwithstanding this deferential standard of review, plaintiff probably will succeed on the merits because most of the factors relied on by the Division either lack evidentiary support or are irrelevant to plaintiffs application.[5]
I turn now to the issue of irreparable harm. Plaintiffs application for a license to present music, floor shows and other forms of entertainment, including nude dancing, implicates state and federal constitutional provisions protecting speech and expression. See T&D Video, Inc., 423 Mass. at 580 (nude dancing at commercial establishments is expressive conduct entitled to protection under the First Amendment); Cabaret Enters., Inc. v. Alcoholic Beverages Control Comm'n, 393 Mass. 13, 17 (1984) (nonobscene nude dancing on licensed premises is protected under art. 16 of the Massachusetts Declaration of Rights); Ward v. Rock Against Racism, 491 U.S. 781, 790 (1989); A.F.M. Ltd. v. City of Medford, 428 Mass. 1020, 1021 (1999). Because denial of an entertainment license curtails plaintiffs ability to exercise its rights under the First Amendment and art. 16, as a matter of law plaintiff will suffer irreparable injury if the injunction *553 is not granted. See T&D Video, Inc., 423 Mass. at 582 (“The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injuxy”) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)).
On balance, the irreparable harm plaintiff would suffer in the absence of the requested relief outweighs the limited injury defendants may sustain as a result of this order. The issuance of an injunction will harm defendants only insofar as they will have to await their desired victory in court on the merits. In the interim, defendants have other means at their disposal to ensure that public safely concerns are met — including the inspection and enforcement powers of the Police Department, Fire Department and Inspectional Services Department.
Plaintiff has also satisfied its burden on the final prong of the preliminary injunction standard by showing that injunctive relief is consistent with the public interest. Defendants contend that the public interest factor cuts against injunctive relief because “there can be no confidence that [plaintiff] would adhere to the public safety standards set forth in the statute.”[6] Defendant’s Memorandum in Opposition at 29. As stated above, however, this injunction does not interfere with other means by which defendants may ensure public safety. Its effect will be to delay the restriction of constitutionally protected activity until defendants establish in court on the merits that such a restriction is warranted. Issuance of injunctive relief will thereby further the strong public interest in protecting constitutional rights.
At the hearing, I raised the issue of whether I have the power to remand this matter at this point to the Division. Plaintiffs counsel responded that I do not; defendants contend in their supplemental memorandum that I do. Although I have found no authorily directly on point, I conclude that my power to remand is inherent in c. 249, §4, under which “[t]he court may enter... such other judgment as justice may require,” and c. 140, §183A, which grants licensing authorities the discretion to reconsider applications. See also Malone v. Civil Service Comm’n, 38 Mass.App.Ct. 147, 152 (1995) (“power to reopen administrative proceedings ‘is inherent in the administrative process and needs no specific authorization by statute or regulation’ ” even though it “must be sparingly used") (citations omitted). Because justice requires that the decision regarding plaintiffs application be made in full compliance with c. 140, §183A, remand of this case to the Division is appropriate.[7]
ORDER
For the foregoing reasons, plaintiffs motion for a preliminary injunction is ALLOWED. Defendants are enj oined from enforcing denial of plaintiffs application for an entertainment license until further order of the court, and the matter is hereby remanded to the Division for reconsideration under the standard set forth in c. 140, §183A. I shall retain jurisdiction.

At oral argument, plaintiff stated that its motion for a preliminary injunction is based on Count I of its complaint, in which it seeks judicial review under G.L.c. 249, §4, and not Count II in which it alleges a violation of G.L.c. 12, §§11H, 111.

Plaintiff also raises procedural challenges to the decision, such as the fact that the hearing was held in a church basement used by groups which publicly oppose adult entertainment. Because I find that plaintiff is likely to succeed on the merits of its substantive challenges, I do not need to evaluate allegations thát the decision-making process itself was flawed.

The statute provides two additional bases, involving noise and traffic increases, upon which to deny a license; the Division did not rely on either of these bases in denying plaintiffs application although some opponents of the license addressed these issues in their submissions to the Division.

For example, the “history of affiliation[s]” or associations of plaintiffs prospective manager and presumed stockholder should have no bearing on the decision. See Caswell v. Licensing Comm'n, 387 Mass. 864, 871-872 (1983). Similarly, past crimes or violations of law cannot justify prior restraints on a person’s communicative activity. See Vance v. Universal Amusement Co., 445 U.S. 309, 311-12, 315-17 (1980).

Both parties recognize that plaintiff is not now in a position to begin operations because it still must secure building and occupancy permits and make architectural changes to the building.

This order is not intended to require the issuance of an entertainment license to plaintiff. That decision must be made by the licensing authority based on the considerations enunciated in the statute.